# CHARLESTON

## CHARLESTON LUMBER CO. *v.* FRIEDMAN.

### Submitted March 5, 1908.  Decided March 24, 1908.

1. DAMAGES—*Liquidated Damages.*

    Liquidated damges. There are two rules for inferring that the parties, by naming in a contract a sum to be paid for its breach, intended it to be as liquidated damages, not a penalty. (1) Where the damages are uncertain and not readily capable of ascertainment in amount by any known or safe rule, whether such uncertainty lies in the nature of the subject, or in the particular circumstances of the case; or, (2) where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties. (p. 156.)

2. CONTRACTS—*Building Contract—Construction.*

    A building contract provides that the contractor shall erect, under the specifications, control and to the satisfaction of named architects, "appointed by and acting for the purpose of this contract as the agent of the said owner." The contract provides that the building shall be completed by a given date, and on failure the contractors "shall pay the owner, by way of liquidated damages the sum of 10 Dollars per diem for each and every day thereafter that the said work remains incomplete and unfinished." The architect has no power to waive such provision. (p. 159.)

3. SAME—*Waiver of Conditions.*

    A waiver or release of a vested right of value under a contract must rest on valuable consideration, and must be clearly and fully proven. The burden of proof is on him who asserts such waiver. (p. 160.)

4. EVIDENCE—*Declarations.*

    A statement or representation, in ordinary cases, must refer to a present or past fact, not to a future matter, or the expression of a mere intention or opinion. (p. 161.)

5. CONTRACTS—*Building Contracts—Extension of Time.*

    A building contract provides that change or extra work may be asked by the owner, and that for it, if extension of time for completion is wanted, the contractor must file a written claim with the architects, giving grounds of extension, and that any extension must be given in a written certificate of the architect. No allowance for delay in such completion can be demanded without such application for and certificate of extension. (p. 164.)

6. DAMAGES—*Breach of Contract—Liquidated Damages.*

    When a building contract provides that the contractor shall pay the owner a sum per day for delay in completion of the building, and the case is such that such provision is one of liquidated damage, there need be no proof of actual damage from delay. (p. 165.)

7. CONTRACTS—*Building Contracts—Architect's Certificate.*

    Where a building contract provides that the work shall be done to the full satisfaction and under the direction and supervision of the architect, and payment shall be made on his certificate that the work has been done according to the contract, such certificate is a condition precedent to recovery by the contractors (p. 167.)

    Appeal from Circuit Court, Kanawha County.

    Bill by the Charleston Lumber Company against Jacob Friedman and others. Judgment for plaintiff, and defendant Friedman appeals.

*Reversed.*

    LITTLEPAGE, CATO & BLEDSOE, for appellant.

    PRICE, SMITH, SPILLMAN & CLAY, for appellee A. F. Withrow & Co.

    BRANNON, JUDGE:

    Jacob Friedman owned a lot on the west side of Capitol street, in the city of Charleston, and upon it, under sealed contract with A. F. Withrow & Co. as building contractors, he erected a store building. G. W. Jobe made a contract with Friedman for putting shelves, counters and casings in the building, and other interior work, and the Charleston Lumber Company furnished Jobe materials

therefor, and it filed a lien for such furnished materials against said lot. A. F. Withrow & Co., the contractors furnishing materials for and erecting said building, also filed a mechanic's lien against said lot. The Charleston Lumber Company brought a suit in equity to enforce its lien against said lot, making A. F. Withrow & Co., as owners of their mechanic's liens, parties, setting up that A. F. Withrow & Co. held such lien. A. F. Withrow & Co. filed their answer as a cross-bill setting up their demand and lien, and as making its enforcement against Friedman's lot. Friedman filed an answer, in which he claimed a deduction from the demand of A. F. Withrow & Co. for liquidated damages at ten dollars per day for delay, beyond the time limited for the completion of the building and other deductions. The case was referred to a commissioner to report upon the controversy, and he reported in favor of A. F. Withrow & Co. for their full demand, without any deduction for such liquidated damages or other deduction, and the court confirmed the report, decreed the full demands of the Charleston Lumber Company and A. F. Withrow & Co., and directed the lot to be sold for payment of their liens, and Friedman appeals as to the allowance of the demand of A. F. Withrow & Co. Thus the demand of the Charleston Lumber Compay is out of the case.

Friedman claims that he is entitled to deduct from the contract sum for the erection of the building at ten dollars per day for 121 days delay, beyond the time stipulated for the completion of the building, by reason of the following clause in the written contract: "Second, Should the said Contractor fail to finish and complete the said works, at or before the time set forth .......................... shall pay to the said Owner by way of liquidated damages, the sum of 10 Dollars *per diem* for each and every day thereafter that the said works remain incomplete and unfinished, unless the time be extended as hereinafter provided." The contract dates 27 July, 1904, and provides that the contractors, A. F. Withrow & Co., " shall and will complete and finish on or before the 1st day of December, 1904, or in four months, all the works, buildings and structures herein provided for." The building was not completed until April 1, 1905.

A question, as a first matter, is raised as to the right to insert by oral evidence the word "they" in the blank found in the contract. No evidence is needed to correct this clerical error, as it is self-correctible. Anybody would say that it was the contractors who were to pay the ten dollars per day for delay in completion, because it speaks that it is for the failure of duty by the contractors that the "owner" was to receive the ten dollars per day damages. It is not an ambiguity, patent or latent, arising from the words; but is an omission of a word, by clerical mistake. The oral evidence to insert "they" does not add to or contradict. It simply supplies an omission. "A written contract should be construed according to the obvious intention of the parties, notwithstanding clerical errors or omissions therein which can be corrected by perusing the whole instrument." *Monmouth &c.* v. *Wallace &c.*, 39 Am. St. R. 626.

A vital question in the case is this: Is the provision for payment of ten dollars per day by the contractors to Friedman for delay over time in the completion of the work to be regarded as liquidated damages or a penalty? If a penalty, equity will not enforce it; if damages liquidated by the contract, equity will enforce it. 2 Page on Contracts, sec. 1167 says: "A contract for a penalty is an agreement to pay a stipulated sum in case of default, intended to coerce performance, to punish default, or to secure payment of the actual damages. A contract for liquidated damages is a contract by which the parties in advance of breach fix the amount of damages which will result therefrom, and agree upon its payment." The intention governs. We find in 13 Cyc. 90 this statement: "The contract is to govern; and the true question is, What was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence if the intention is clear. If there be no fraud, circumvention or illegality in the case the court is bound to enforce the agreement." In *Stony Creek L. Co.* v. *Fields & Co.*, 102 Va. 1, the law is stated as follows: "Whether a given sum agreed to be paid in case of the breach of a contract is to be regarded as liquidated damages or as a penalty must depend on the facts of the particular case, regardless of the name by which the parties have called it. If the contract is for the doing of a single

specific act, and there is no adequate means of determining from the contract or otherwise the precise damage which may result from its breach, the sum agreed will generally be regarded as liquidated damages and not a penalty; but, when from the nature of the contract or the work to be performed it is not difficult or impossible to ascertain the damages resulting from a breach, the sum stipulated will generally be regarded as a penalty." In *Mathews* v. *Sharp*, 99 Pa. St. 560, the law is stated as follows: "In order to determine whether the sum named in a contract as a forfeiture for non-compliance is intended as a penalty or as liquidated damages the whole contract must be looked to. The subject matter, the ease or difficulty of measuring the breach in damages and the magnitude of the stipulated sum—not only as compared with the value of the subject of the contract—but in proportion to the probable consequence of the breach." When damages from breach of contract are "uncertain in amount, and not readily susceptible of proof, then if the parties have expressly agreed upon a sum as the measure of compensation for the breach, and that sum is not disproportionate to the presumable loss, it may be recovered as liquidated damages. Stipulations for specific or liquidated damages on breach of a contract to build within a limited time are enforceable." *Monmouth Park* v. *Wallace Iron Works*, 53 N. J. L., 125, 39 Am. St. R. 626. "Because of the difficulty of ascertaining with certainty the damages arising from the failure to complete working contracts within the stipulated time, the parties to such contracts frequently provide for the payment of a specific amount as liquidated damages for failure to perform the contract in time, and the courts have unhesitatingly upheld and enforced such provisions." 30 Am. & Eng. Ency. L. (2 ed.) 1263. "Where the damages are uncertain in their nature, difficult to ascertain or impossible to be estimated with certainty, by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the particular circumstances, and are therefore better able to compute the actual or probable damages, it has been the rule to allow the parties to ascertain for themselves, and provide in the agreement itself the amount of damages which shall be

paid." 13 Cyc. 97. "There are two excellent rules given for inferring that the parties intended the sum as liqui-dated damages: (1) Where the damages are uncertain and not capable of being ascertained by any satisfactory or known rule, whether the uncertainty lies in the nature of the subject itself, or in the particular circumstances of the case; or (2) where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of actual and fair calculation and adjustment between the parties." 13 Cyc. 90. "Pro-visions in a building contract, that the contractor shall pay a certain sum per day if the building is not completed by the time agreed upon, are generally held to be for liquidated damages if reasonable in amount. Thus in the case of a contract for the erection of a building, a provision for the payment of fifty dollars a day, twenty dollars a day, ten dollars a day, or five dollars a day, have each been held to be valid as liquidated damages, where not greatly in excess of the actual damage caused by the delay. A provision in a contract for installing an electric light plant, for paying five pounds a day for delay after the time fixed by the contract, has been held to. be valid as a provision for liqui-dated damages." 2 Page on Contracts, section 1183. All the authorities, and there are many more than those cited, say that a test to distinguish a case of liquidated damages from penalty is, that if it is difficult to prove or ascer-tain the amount of damages, it is not a penalty, but liqui-dated damages. Try this case by that test. Friedman was a large retail merchant carrying on business in a building near the new structure, not suiting him. He undertook the new one. He wanted it for the large sales usual before and during the holidays. The contractors failed him. Next he wanted it for early spring stock. The contractors failed to let him have it until late for this purpose. He went to New York 3rd March, 1905, after being assurred by the contractors before he started that they would employ additional workmen and have the building ready for a new stock of goods in two weeks, and Friedman bought a stock of goods costing $46,000. He returned 25th March and found the building pratically the same as when he left, no windows in it. He tried to countermand his purchases, but the New York

merchants would not allow him to do so, and on came the goods, and he was compelled to put part of them in the old store, and overcrowd it, and impede his usual business in it, and allow the rest of his new goods to lie in the railroad depot for a time uninsured. The new stock of goods was too large for the old store. How would he prove the damage flowing to him from 27th November till 1st April? What did he lose from the obstruction of business in the old store room? What did he lose from inability to get new goods and sell approaching and during the holidays? What did he lose from inability to sell in the new store room? It would be impossible to say. We find in 13 Cyc. 91 that to determine whether such a provision is one of liquidated damages we must look at the whole contract, its subject matter and the situation of the parties. Look at them in this case, and we must conclude that Friedman thought he was providing compensation for breach, and the other party must be held to look at it in the same light. The parties called the provision one of liquidated damages. They themselves gave it that construction. Why shall we give it a different construction? We quote from 13 Cyc. 98 the following: "Where a party has defaulted in the performance of some contract involving a stipulation of forfeiture, the courts as a general rule construe the same as liquidated damages rather than as a penalty, unless it can be seen from the evidence that the forfeiture is disproportionate to the breach. The question as to liquidated damages or a penalty very frequently arises under contracts for building, which provide a forfeiture of a certain amount for each day in which the work is delayed. The courts have usually construed such forfeiture clauses as liquidated damages rather than as a penalty; and this principally on the ground of the uncertainty in calculating the damages claimed. Where, however, from a consideration of the contract, and the intention and circumstances of the parties, it can be determined that the agreement was really intended or should be construed as a penalty, the courts have not hesitated so to construe it." This is not a dwelling house. Rental might be the measure of damages if it were; but it is a store house, and we can consider the use intended in saying whether damages can be easily meas-

ured. *Kelly* v. *Fejervary*, 83 N. W. 791. In our own case, *Wheeling Mold & Foundry Co.* v. *Wheeling Steel & Iron Co.*, 51 S. E. 129, (58 W. Va. 62), the contract required the machinery to be delivered within a fixed time, and on failure fifty dollars for each day's failure was to be deducted from the contract price. We held this to be a case of liquidated damages, and allowed the abatement. Why does not that case govern this one? It being a case of liquidated damages, not a penalty, a court of equity no more denies them than a court of law. 2 Story's Equity, section 1318, says that in cases of liquidated damages "Courts of Equity will not interfere to grant relief, but will deem the parties entitled to fix their own measure of damages, provided always that the damages do not assume the character of gross extravagance or wanton and unreasonable disproportion to the nature or extent of the injury." Surely there is nothing unreasonable in ten dollars per day in this case, a large store kept out of the house four months. The contract was prepared, with twenty-five dollars per day, but the contractors objected, and ten dollars was inserted at their instance, thus showing a sedate purpose and intent to fix an agreed sum as liquidated damages, not an idle, worthless penalty.

As to the matter of real justice Friedman swears that the contractors used no diligence, and that he complained of this to them from start to finish. The architects swear that they complained of delay again and again to the contractors, and even threatened to take the contract from the contractors, and allow the owner to complete it under a provision of the contract. They swear that there was great delay on the part of the contractors in providing material, and they were incompetent. They are disinterested witnesses, while the contractors who imputed delay to extras called for by Friedman are deeply interested.

But it is said that the demand for such damages was waived. One ground for this is that Connell, one of the two architects, said to Kinsey and Jones, two of the contractors, that there would be no forfeiture for delay in completion. Connell flatly denies this. What if Connell did say so? He had no authority to dispense with an important provision of the contract. Page on Contracts, section 1465.

It is here said that the contract provides that the work was to be done under the direct and personal supervision of Connell and Pierson, architects, "appointed by and acting for the purposes of this contract as the agents of the owner." That is an agency for the proper execution of the contract in the interest of their principal, not for his destruction by abrogating clauses made for the owner's safety. They have no powers save those given in the contract. They are not general agents with unlimited authority, but special agents of limited authority. In *Severone* v. *Arancio*, 179 Mass. 439, (61 N.E. 45), the architect was appointed "for the purposes of the contract the agent of the owner." *Held*, that this power went only to see that the work fulfilled the specifications, and did not empower the architect to waive any condition of the contract. In *Gibbs* v. *School District*, 195 Pa. St. 396, the building contract stated that the specifications were prepared by the architect "acting for the purposes of this contract as agent of said owners." *Held*, that the architect was the agent of the owner "to see that the contract was enforced, and that he must act according to and within the terms of its provisions. His power must be exercised with, and not contrary to the purpose and intention of the parties as expressed in the agreement. It will not be presumed that the school board intended to clothe the architect with authority which would permit him to annul or set aside the contract. Such a construction would not be reasonable and, in our opinion, is not supported by the language of the agreement." It was held that he could not waive provisions of the contract. The same rule is propounded in *Rowland Lumber Co.* v. *Ross*, 100 Va. 275. 6 Cyc. 29, and 2 Am. & Eng. Ency. L. (2 ed.) 820, both say that he is not general agent, and cannot change the contract made by the builder and his employer. Many cases so hold. This waiver of the architect, if made is void for another reason, want of consideration, as an agent's contract, to bind his principal, must have consideration. It is not claimed that Friedman ever knew of such statement of Connell.

. Another ground of waiver alleged is, that Friedman said to one of the contractors, "that as he did not get the build-

ing for Christmas trade he did not want it then until spring trade." Quite unlikely that he said so. But Friedman flatly denies this, and only one contractor asserts it, witness against witness, and the burden on the contractors to show waiver or release. And this declaration was first January, after failure to complete. Is it possible that such a loose declaration, if made, could take away a demand, a vested right? JUDGE DENT said: "And now by such loose declaration the attempt is made to show that she agreed to depart from the written contract. * * * To thus change a sealed obligation is asking too much of a court of equity." *McConnell* v. *Hewes,* 50 W. Va. p. 39. As I said, it is witness against witness, the burden of proof on the contractors asserting the waiver. An oral waiver of a contract "must be clear, positive and above suspicion, and cannot be proven by mere loose casual conversation." *Cunningham* v. *Cunningham,* 46 W. Va. 1, see p. 4. 29 Am. & Eng. Ency. L. (2 ed.) 1100. This so-called waiver of Friedman fails for want of preponderating evidence, and really it is useless to further consider it. But suppose that such declaration by Friedman were fully proven. A waiver or release of a vested right under a contract is itself a contract, and must be based on a consideration. There was none in this case. "A promise made after a contract is entered into, to extend the time of performance is without consideration and unenforceable." Page on Contracts, section 1344. There we find that "a modification of a contract which relieves from some liability imposed by such prior contract without imposing any liability upon A. in place thereof, and without modifying B's liability in any way, is of no effect as a discharge of such prior contract." "In order that a release or waiver should bind, it is necessary that it be under seal; otherwise it would be nothing more than a promise given without consideration, to forbear from the exercise of a right." Anson on Contracts, section 404. A waiver must be supported by an agreement founded on a valuable consideration. 29 Am. & Eng. Ency. L. (2 ed.) 1097. If a creditor merely says to his debtor, "You need not pay the debt which you owe me," there being no consideration, clearly this would not release the debt. Many times

has this Court held that where a creditor gives the principal debtor indulgence it does not release the surety, unless the promise of indulgence rests on valuable consideration. *First National Bank* v. *Parsons*, 45 W. Va. 688; 13 Cyclopedic Digest 32. Indulgence to a debtor, to bind the creditor, must rest on valuable consideration, as shown by last cited case. Alterations in a written contract must have new and distinct consideration. *Thurston* v. *Ludwig*, 67 Amer. Dec. 328. " No voluntary declaration by a creditor of an intention to release a debtor, unless accompanied by some act which amounts to release at law, will work an, equitable release." Beach on Contracts, section 470. "A promise to release a debt is not the same thing as an actual release, and if there is no sufficient consideration for the promise to release, the promise is *nudum pactum*." *McNutt* v. *Loney*, 153 Pa. St. 281. "Since the release of a contract or other obligation is itself a contract, the general rule of law applies that it must be based on a legal and sufficient consideration." 24 Am. & Eng. Ency. L. (2 ed.) 287. So all the books say. Bishop on Contracts, section 851; Hammon on Contracts, section 332. So, the declaration attributed to Friedman, if ever made, can not operate as a release or waiver.

Can this declaration count as an estoppel *in pais?* How would the contractors use it, this loose declaration, not contract? Would they say that it is a promise not to insist on the delay clause? Established law denies this. *Mason* v. *Bridge Co.*, 28 W. Va. 639 holds: "The representation, to work an estoppel, in all ordinary cases must have reference to *a present or past state* of things, not to a future matter or the expression of a mere intention or opinion." In *Jordon* v. *Mooney*, H. L. Cases, 185, we find this: " When a person possesses a legal right, a court of equity will not interfere to restrain him from enforcing it,, though between the time of its creation and that of his attempt to enforce it he has made representations of his intentions to abandon it. Nor will equity interfere even though the party to whom these representations were made has acted on them, and has in full belief in them entered into irrevocable engagements. To raise an equity in such a case there must be a misrepresentation of existing facts,.

and not of a mere intention." This statement, 1st January, after the contract had been broken, did not induce its breach, as that already had taken place. The remark, if made, cannot bind as a promise in future, and may have been made in petulance at the delay. This loose declaration is sought to operate as an agreement for delay. Did Friedman ever mean it to have that force? Did the contractors so understand it? Why should they? Where the consideration for it is a promise? Where its binding character? Will courts destroy rights on so frail a foundation?

Excuse for delay in completion is also based on the claim that Friedman ordered extras and additions to the work. Here another clause of the contract is involved. "6th. Should the said contractors be obstructed or delayed in the prosecution of the said works by the act, default, neglect or delay of the said owner, or the said architects, or by reason of any change or changes in the said drawings and specifications as provided in article seven hereof; or elsewhere because of any other contractors employed by said owner, or architects upon said work, or by any damage which may happen by fire, lightning, earthquake, act of God, or cyclone, or by the abandonment of said works by the employees thereon through no default of said contractors, then the time herein fixed for the completion of said works shall be extended for a period equivalent to the time so lost by reason of any or all of the causes aforesaid. The duration of such extension shall be computed and certified in writing by the said architect to both the said owner and said contractors, but appeal from such decision within ten days after the same has been delivered to the said parties may be had to arbitration as provided in article seven hereof. *But no allowance for the same shall be made unless a claim thereof is presented in writing, showing the reason for such extension to the said architect before the next succeeding payment under this contract is made, as provided in article eight thereof.* A certificate or receipt of such payment or the payment made, next succeeding the cause for such extension shall be conclusive evidence that the same has been allowed, or that the party then and thereby releases and waives any

and all right to any such extension.    Each certificate or payment being conclusive evidence, by agreement of parties that all extensions have been to that date allowed, or waived and released." The architect allowed no extras. The contract required them to certify them. Friedman offered to pay them however.

No extension of time was given or asked. The contractors simply went on, taking their own time, although speed was demanded, frequently by the two architects and Friedman, as they flatly swear. The active contractor superintending the work, states as a witness, that his firm had never in the past paid delay damages, and "we never thought there would be any trouble in the case; therefore, we were not as careful as we should have been in asking the architects to extend this matter in writing. We never have asked for a piece of writing yet, never asked an architect to extend our time and never paid a time forfeiture, and it is not our custom." Elsewhere he says he *neglected* to get an extension.

Now, the contract allowed Friedman to change and to make extras. If he did so he did no wrong. The contract in such case, by way of compensation, allowed the contractors to present to the architects a claim for extension, (it must be in writing) and bound the architects to give it, if based on good cause. The contractors must apply to the architects, stating reasons for extension, and then the architects were to say whether there was reason for extension, as between contractors and Friedman, and any extension must, by the letter and reason of the contract, be shown, not by slippery memory or depend on conflicting evidence, but on written certificate. No extension is allowed but one granted by the architects, and the contract makes their certificate of extension the only evidence of the extension. Will we abrogate this clause? The contract limits the time for completion of the building. To protect Friedman against excuse for delay for extras or other causes, it demands that the contractors shall present their claim for more time to the architects, and they shall decide on its merits, and fix the additional time and not leave it open to controversy. The contract makes a written certificate the only evidence of extension. Fried-

man has right to rely on this clause. The contractors had the right to have the extension settled before doing the extra work. As they did not ask enlargement of time, we may assume that they deemed the time fixed by the contract sufficient to cover extra work, as the contractors swear it was, saying that it was ample for the completion, and that the extra work and change would not exceed twenty days, if so much. In *Dormott* v. *Jones*, 23 Howard, 229, the court said that the contractors went on with extra work without agreement for extension, it was to be presumed that no enlargement was expected or wanted. The architects say no complaint was made by the contractors on account of extras. *Gibbs* v. *School District*, 195 Pa. St. 396, asserts this principle of the necessity of a writing from the architect of change. In *Feeney* v. *Bardsley*, 66 N. J. L. 239 the syllabus says: "When a building contract provides that the building shall be completed at a specified time, and that for every day it remains unfinished after such date the contractor shall pay the owner five dollars as liquidated damages, and also provides that the contractor shall be allowed additional time when he is delayed by the fault or neglect of other contractors, provided he gives notice, in writing, to the owner of such neglect of other contractors, the owner is entitled to the written notice, and the contractor cannot be allowed additional time in the absence of it." The case says that the owner was entitled to the notice. In *Florida N. R. Co.* v. *South Supply Co.*, 37 S. E. 130, we find this: "We think that the contract plainly meant that in case of delay arising from such causes it was incumbent upon the contractor to give actual notice thereof to the railroad company within a reasonable time after the delays occurred, and make demands for proper extension of time, and that, failing so to do, the contractors should be chargeable with the consequences of such delays; otherwise the whole matter would be left in an indefinite and indeterminate condition, which we do not think was contemplated by the parties." *White* v. *Railroad*, 50 Cal. 417 and other cases are cited by counsel sustaining the necessity of a written extension where the contract stipulates it. It is similar to the ruling on the provision usual in building contracts, that no claim for extra

work shall be sustained except on the written order of the architect. *Atlantic Co.* v. *Del. Con. Co.*, 98 Va. 504, point 6; 30 Am. & Eng. Ency. L. (2d ed.) 1283; *Abbott* v. *Gatch*, 71 Amer. Dec. 635.    This case also says that "contracts must be interpreted and enforced according to the fair import of their terms, without reference to the hardship that may fall on the parties."

It was suggested that as, after failure to complete within time, the fact that the contractors were allowed to go was a waiver of the breach.    This would be unreasonable. Friedman favored the contractors by not demanding, under the contract, that they give up the work.    By consenting that they go on he did not waive damage.    *McIntire* v. *Barnes*, 4 Colo. 285; Waterman on Set-off, sec. 515; *Shute* v. *Hamilton*, 3 Daly 462.

Strenuous argument was made at the bar that Friedman had suffered no damage from delay.    Under facts stated above this cannot be true.    It is hardly realizeable that a merchant carrying on in a populous community, in a city, a large retail store is not injured by a four months delay in completion of a new store building.    He necessarily suffered some damage.    But we need not inquire as to this, as the parties have themselves agreed that for failure of completion in the time specified damage would ensue to Friedman, and they have measured the amount of damage. For this reason the law says that, in case a contract fixes liquidated damages, no proof further of damage is required. "Proof of actual damage is not necessary."    2 Page on Contracts, sec. 1171; 13 Cyc. 90 in note 20.

The architects by their final certificate allowed Friedman 103 days compensation at ten dollars per day for delay, excluding holidays.    The contract provides that the work should be done to the entire satisfaction of the architects.    Payment was to be made only on their certificate that the work was done according to contract.    The contract makes the architects sole arbiters in this matter.    Their decision is final. *Plumbing Co.* v. *Carr*, 54 W. Va. 272.

The architects gave Friedman a writing addressed to Friedman saying that "A. F. Withrow & Company, contractors for your new building on Capitol street are entitled to settlement, *as per contract.*"    This is asserted to

be an acceptance of the work without abatement for delay. The instrument does not say so. It says that the contractors are entitled to settlement *as per contract.* If they meant to allow the full sum without abatement why use the word "settlement"? This meant an accounting, especially when the architects in another paper given Friedman allowed Friedman damages for 103 days delay, $400 for defective plastering, and $40 for defective floor. They meant that these things would enter into "settlement." And notice that they say "settlement as per contract." The contract allowed this deduction for the delay. The contractors as witnesses say that they had nothing to say as to release of this delay, that being a matter for Friedman, and they did not intend to accept free of abatement. Such their construction of the writing, and it is not inconsistent with Friedman's claim for abatement. Such their intention in the writing.

The official report of the architects to Friedman gave him a deduction of $400 for defect in plastering. This report or certificate, by the contract, is conclusive, because it made them arbiters, and declared that payment should be made only on their written certificate. The contractors can not recover for their plastering without such certificate, as it is a condition precedent to recovery. *B. & O. R. R.* v. *Shoals*, 56 Am. St. R. 307 and note. Page on Contracts, sec. 1463. It must conform to conditions of the contract. 1 Wharton, Contracts, 792. We find in 1 Wharton, Contracts, sec. 594, that "No matter how arbitrary may be the action of the architect in refusing to give the certificate required by the contract, yet, if he persists in refusal, the builder cannot recover on the contract price." You cannot control his judgment and discretion for the contract leaves the matter to his judgment. Fraud is another matter. *Plumbing Co.* v. *Carr*, 54 W. Va. 272, holds the same as stated in Wharton. It refers to authorities for the proposition that the architect's certificate is a condition precedent to recovery of the contract price. But it is said that the architects bound Friedman by acceptance of the plastering. This is asserted on the fact that Anderson & Cantley were subcontractors employed by the Withrow Company to do the plastering, and, when they asked pay from the Withrow Company that com-

pany demanded a certificate from the architects, and the architects gave a letter to Kinsey saying, "All pointing is practically done; and $25 or $30 will be enough to hold to satisfy." Later the plasterers got from the architects a letter addressed to Kinsey saying, "The plasterers have finished pointing up, and we see nothing else for them to do." How do these papers bind Friedman? They were not addressed to him. They were between the contractors and their subcontractors. The contract gave the architects no power to act between the contractors and their subcontractors. When they acted as above set forth they assumed functions not given them by the contract, not at all binding Friedman. A member of the court suggests that the architects could not be agents for both owner and contractors. They were antagonistic interests. The parties ought to know so. If the certificate given Friedman by the architects and the papers above clash, which shall have precedence? Clearly the certificate called for by the contract given Friedman. But do they really clash? The certificate above simply said that the plasters had finished, as between them and their employers, but did not say that as between Friedman and his contractors the plastering had been done conformably to the contract. It did not speak of the quality of the plastering, merely the finishing.

The architects also certified to Friedman that he was entitled to deduction of $40 for a bad floor. The same remarks may be made as to this, except that the defense to it is weaker, as the architects declined to give a final certificate as to it, saying their functions had ended. We think Friedman is entitled to the deductions of $400 for plastering and $40 for the defective floor. These deductions and payments made leave nothing due the contractors.

Therefore, we reverse the decree, except as to the rights of the Charleston Lumber Company, which are reserved without prejudice from this decree, and the bill of the plaintiffs and answer of A. F. Withrow & Co. are dismissed as to Jacob Friedman.

*Reversed.*