## Dick v. James Clark, Jr., Electric Company.

(Decided December 15, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Sales—Of Machinery—Guarantee of Satisfaction—Rights of Purchaser.—Where machinery is sold under a guarantee that it will operate to the satisfaction of the purchaser, he has the right to determine for himself whether it is giving satisfaction, and if it does not give satisfaction, he has the right within a reasonable time to return it.

2. Sales—Of Machinery—Guarantee of Satisfaction—Reasonable Time to Return.—If machinery is bought under a guarantee that it will work in a manner satisfactory to the purchaser, he has a reasonable time in which to discover whether it will work to his satisfaction or not and a reasonable time after making the discovery that it is not satisfactory in which to return it, but if he fails to return it within a reasonable time he must pay for it. What is a reasonable time depends on the facts and circumstances of each particular case and is a question for the jury, unless the evidence plainly shows a state of facts that authorize a directed verdict.

3.  Sales—Of Machinery—Guarantee of Satisfaction—Time in Which
    Purchaser May Return—How Affected by Promise of Seller to
    Repair.—Where machinery is bought under a contract that it will
    give satisfaction to the purchaser, and it fails to do this, the fact
    that the seller makes repairs every time complaint is made, will
    not extend the reasonable time in which a return must be made,
    unless the seller requests the purchaser to keep the machine
    under a promise that he will make it operate in a satisfactory
    manner, or unless the seller, by his course of dealing, has induced
    the purchaser to believe that he may keep the machine without
    losing his right to return it within a reasonable time.

ALBERT C. DICK for appellant.

AUSTIN P. WALSH and KINNEY & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Electric Company, brought suit against
the appellant, Dick, to recover $545.09, consisting of
$525, the price of a vacuum cleaner, the remainder being
for fixtures.  The suit was brought in March, 1912, and
it was alleged, and is not denied, that the vacuum cleaner
was furnished and installed in November, 1910, and
further alleged that the sum sued for was due in December, 1910.

For answer to this suit, Dick, after admitting the purchase of the cleaner at the time and for the price mentioned, averred that, as a part of the purchase, the electric company gave him a guarantee that the cleaner would
give him entire satisfaction, and that he would not have
to pay for the same unless it worked to his satisfaction.
He further averred that it had never done satisfactory
work and that the electric company, on numerous occasions, had promised to repair it so that it would operate
in a satisfactory manner; that, relying upon the promises to repair, he retained the cleaner, but, when all efforts to repair it had failed, and in March, 1912, after
suit was brought, he notified the electric company that
he would not accept the cleaner and that he held the
same subject to their order.

To this answer a reply was filed, completing the issues.

After this, the case went to trial before a jury, and,
by direction of the court, there was a verdict for the
electric company for the amount claimed.

The question for decision is, did the court err in taking the case from the jury?

Dick testified, in substance, that when he bought the cleaner in 1910 the electric company guaranteed that it would operate in a manner satisfactory to him in every respect, or else he did not have to pay for it; that shortly after it had been installed it made so much noise that the tenants in the building complained. He further said that for one cause and then another the cleaner had failed to give satisfaction or operate properly from the time it had been installed; that, although the electric company sent its men to repair and adjust it time and again, they failed to make it work in a satisfactory manner or to do the work it was intended to do.

Asked if he ever notified the company to take the cleaner out of his house, he said: "Well, I think I wrote them one time about it." In this connection it might be noted that the first letter written by Dick to the electric company complaining of the manner in which the machine worked was on December 26, 1911, some thirteen months after the cleaner was installed.

Farther in his examination this occurred: "Q. Was any time mentioned as to when you should determine as to whether or not it was satisfactory to you? A. No, sir. Q. What was the agreement about the time? A. The agreement was it was to work satisfactory to me in every way; but it never did from the start. Q. How long did you have to determine that? A. There wasn't nothing said that I recall about that. Q. You were to choose your own time to determine whether or not this machine was satisfactory? A. I say the same thing over; I don't recall anything about that part. Of course, naturally, if a business man buys anything, he expects to pay for it if it is satisfactory. Q. And you expected to have as long a time as you wanted to determine that? A. Oh, no; when it didn't work at the start that settled it with me; but as long as they kept on trying and still it didn't work, I knew it wasn't going to be satisfactory. Q. You have still got this cleaner in your apartment house? A. Yes, sir. Q. When did you first make any objection to it? A. Right at the start on account of the noise. Q. Was that remedied? A. Yes; but then some other troubles come up. I can't recollect what. It was first one thing and then another all the time. Q. Is it not a fact that you had that machine out there at your apartment house and used it and operated it and never made any complaint about the motor until the fall of 1911, one year after you bought it? A. There was always some-

thing the matter with it.  Q. Mr. Dick, answer the question; is that not a fact?  A. Could not tell you that at all.  Q. What was the matter with the motor, do you know?  A. I could not tell you, only he said it was not large enough to do the work.  Q. After you made this complaint about the motor, did Mr. Clark agree to give you a larger motor?  A. Mr. Clark said he would put a larger one in if I would pay the difference, which I declined to do.  Q. Didn't he finally offer to give you a motor?  A. Yes, sir.  Q. Why didn't you take it?  A. Because he wanted me to accept it if he put the motor in, and I said, 'I don't know whether that is the whole cause of it, and if you put the motor in and it works all right, I will take it.' "

There was further introduced during the examination of Mr. Dick a letter dated April 10, 1912, in which, for the first time, he made a tender of the cleaner to the electric company.

James Clark, Jr., manager of the appellee company, introduced as a witness for Dick, said, in substance, that after the motor had been installed Mr. Dick complained about the noise it was making, and that he sent a man out to see what the trouble was every time complaint was made; that some changes were made to eliminate the noise, and afterwards some other changes were made. He said the noise was attributable to some conditions in the construction of the building and not to defects in the cleaner.

Without relating further of the evidence, it is sufficient to say that Mr. Dick complained often to the electric company about the cleaner not working in a satisfactory manner, and that whenever he made complaint, the company sent a man out to remedy it or see what the trouble was; and that after some repairs eliminating the noise had been made, the cleaner worked in a satisfactory manner when it was operated by the employes of the company, but failed to give good service when operated by the janitors in charge of the building where it was located.

The lower court, in directing a verdict for the electric company, was influenced to do so by the fact that it was the duty of Dick, if the cleaner did not work to his satisfaction to return or offer to return it within a reasonable time, and that, as he retained the cleaner for about seventeen months without offering to return it, he waived his right to return and must keep and pay for

it, notwithstanding the fact that he was continually protesting that the cleaner did not work to his satisfaction, and the electric company, as often as he complained, sent its men to remedy the trouble.

For the electric company the argument is made that when a machine is sold and guaranteed to work to the satisfaction of the purchaser, it is the duty of the purchaser to inspect and test the machine within a reasonable time after it is delivered, and, if it is unsatisfactory, to return or offer to return it to the vendor within a reasonable time after discovering that it is not satisfactory.

While counsel for Dick argue that this general principle, which is conceded to be correct, is not applicable or controlling in this case, because the electric company, by its promises to repair and its attempt to repair the cleaner, had waived its right to make the defense that Dick had failed to return or tender the cleaner within a reasonable time after he discovered it did not operate in a satisfactory manner.

Under the contract Dick had the right to return the cleaner if it was not satisfactory, and, of course, if returned for this reason in a reasonable time, he could not be compelled to pay for it. It may also be conceded that, under the contract, he was the sole judge of the question as to whether or not the cleaner was satisfactory. He had a right to determine this matter for himself. Kidder Press Co. v. Reed, 133 Ky., 350. It may also be readily admitted that the cleaner was not satisfactory to Dick; so that the only question left open is, did he exercise, within a reasonable time, his right to return it?

When a purchaser, under a contract like this, receives property or machinery of any kind, he is allowed a reasonable time in which to determine whether it is satisfactory to him or not; but, if he finds it is not satisfactory, he must return it within a reasonable time after coming to this conclusion. Yeiser v. Russell & Co., 26 K. L. R., 1151. And, generally speaking, the question whether the offer to return unsatisfactory articles is made within a reasonable time is for the jury, but when, under all the facts and circumstances of the case, it plainly appears that the offer to return was not made within a reasonable time, the question becomes one of law to be determined by the court.

In this case Dick testifies that within a few days after the installation of the cleaner he discovered that it was not satisfactory, and, this being so, his retention of it for more than a year without any offer to return it would seem to clearly establish that he did not offer to return it within a reasonable time after coming to the conclusion that it was not satisfactory, and, therefore, the question would be one of law for the court, and not of fact for the jury.

It is, however, earnestly insisted by counsel for Dick that the conduct of the electric company took this case out of the general rule and relieved Dick of the necessity of returning the cleaner within a reasonable time after he learned it would not be satisfactory. The conduct thus relied on as a waiver of the right of the company to insist that Dick lost his right to return by his laches is based on the fact that the electric company was continually making repairs on the cleaner and attempting to put it in such condition as would satisfy Dick.

It is true that on a number of occasions, extending through several months, the electric company did send its men to repair the cleaner and put it in working order. Indeed, the evidence shows that Dick often complained to the company that the machine was not doing satisfactory work and that almost every time complaint was made it sent one of its men to remedy the trouble. Probably the difficulty with the satisfactory operation of the machine was due to the fact that the employes of Dick who undertook to operate it did not understand how to do so, and possibly there may have been some defects in the cleaner that interfered with its successful operation even by a skilled person; but, however this may be, it is certain that Dick made frequent complaints and the company as often complied with his request and sent its men to adjust the cleaner.

But there is no evidence that the company ever requested Dick to keep the cleaner or that it promised or agreed in any way with him that if he did keep it, it would put or keep it in repair. Nor is there any evidence that it induced him in any way to believe that, if he would keep the cleaner, it would make it do satisfactory work. All that it did do was to send its men to see about it every time complaint was made.

Counsel for Dick argue, and it is probably so, that this course of conduct on the part of the company misled him into the belief that it would finally put the machine

in a condition that it would do satisfactory work, and for this reason he did not offer to return it sooner than he did. But we do not think this excused Dick from tendering the cleaner back within a reasonable time after he found it not to be satisfactory, or that in law the conduct of the company amounted to a waiver on its part of the right to demand that Dick's unreasonable retention of the cleaner should make him liable for the contract price.

Undoubtedly, if the company had requested Dick to keep the cleaner until it could be made to do satisfactory work, or if, by its course of dealing, it had induced him to believe that he could keep the cleaner without losing his right to return it within a reasonable time, it could not meet his defense by the assertion that he had lost his right to avoid the purchase price by his failure to return the cleaner within a reasonable time. But we do not think the facts bring the case within the application of this rule, and, as the election was with him to either keep or return the cleaner, we think that by failing to return it within a reasonable time he lost his right to do so, and must pay the purchase price.

The judgment is affirmed.