# Stratton & Terstegge Co. v. Criswell et al.

Jan. 23, 1942.

As Modified on Denial of Rehearing March 20, 1942.

Rodney Haggard and D. L. Pendleton for appellant.

M. C. Redwine and Catlett L. Buckner for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, Stratton & Terstegge Company, plaintiff below, is engaged in the wholesale hardware business in Louisville. It brought this action against J. Herman Criswell and Ray Rushmeyer, partners doing business as the Clark County Supply Store, for the balance of $2,928.28, with interest, due on a stock of merchandise of $4,390.63 sold the defendants in February and March, 1938, with perhaps $175 thereof sold in April of that year. The trial resulted in a verdict in favor of Criswell (the verdict failing to mention Rushmeyer), and from the judgment dismissing the petition against both defendants this appeal is prosecuted.

Since we have reached the conclusion that plaintiff's motion for a peremptory instruction should have been sustained, we will discuss but two of the many grounds upon which plaintiff seeks a reversal of the judgment: 1. The general demurrer should have been sustained to the answer as amended. 2. A peremptory instruction should have been given in favor of plaintiff after defendants presented their case. The defendants having admitted the debt and having pleaded satisfaction thereof, the court properly ruled they had the burden of proof.

Plaintiff brought its suit on October 29, 1938, and on December 5th following, defendants filed their answer and counterclaim which did not raise an issue as to the amount of the account, but the sole defense pleaded was that at the time the goods were purchased the plaintiff agreed "it would allow the return within a reasonable time of all unsold and unsaleable stuff after a few months effort at selling same." This pleading alleged that in August, 1938, the plaintiff allowed the return of all unsold hardware from the Paris, Ky., store operated by defendants, and since August of that year defendants had insisted that plaintiff permit the return of goods

from this Winchester store represented by the account sued on, which plaintiff refused. Defendants filed with their answer and counterclaim an invoice of the goods they sought to return in the sum of $2,677.25, which pleading tendered the goods to the plaintiff and averred they held same subject to its orders; in addition thereto they offered to confess judgment for the balance of $186.55.

On April 3, 1939, Criswell filed a separate amended answer in which he withdrew all allegations of the first and joint answer which were inconsistent therewith. In this amendment Criswell pleaded the partnership between him and Rushmeyer was dissolved on August 6, 1938, by a written contract wherein he took the Paris store with the stock and assumed its obligations and Rushmeyer took the Winchester store with its stock and obligations; that the plaintiff received a copy of this dissolution agreement and thereafter allowed Criswell to return to it at 10% discount all unsold goods it had shipped to the Paris store (except a small number of broken packages), which left him owing $936.51, all of which he has paid; that at the time he returned "said goods to the plaintiff and settlement (was made) with the plaintiff he was given to believe by the plaintiff that said transaction was pursuant to the terms of said contract of dissolution."

A general demurrer was sustained to this amended pleading, as well as to the second amended answer Criswell filed. His third amendment was in five paragraphs. The first paragraph of which denied owing plaintiff any sum; the second alleged that at the time of the purchase of the goods plaintiff agreed that defendants might return within a reasonable time all unsold and unsaleable goods after a few months' effort at selling same; the third paragraph alleged plaintiff accepted the return of the goods from the Paris store at a 10% discount and Criswell's payment of the balance due on the account of goods sold the partnership for that store "in full satisfaction of this defendant's entire obligation to the plaintiff arising out of the partnership business." The court sustained a demurrer to the fourth and fifth paragraphs which alleged the plaintiff's acts in approving the contract of dissolution lulled Criswell into a false sense of security, and that a tender of the return of the goods in the original answer is a defense to this action. The

affirmative allegations of the third amendment was traversed by a reply.

The plaintiff insists that the demurrer should have been sustained to the second and third paragraphs of the third amendment. To this we cannot agree in view of the direct averment just alluded to as contained in those paragraphs of that pleading. If sustained by the evidence, such averments constitute a good defense to plaintiff's action.

One cannot read this record without feeling that very soon after the goods were purchased the defendants sought to devise ways and means whereby they might be relieved of personal liability therefor. On April 28, 1938, they formed a corporation, "Suppliers Incorporated," with 100 shares of capital stock ($100 par) to which each partner subscribed for 49 shares and their wives for one share each. The minutes of the first meeting show this stock was fully paid by the defendants assigning to the corporation all assets of the two stores owned by the partnership, including "good will," which latter must have constituted a considerable part of the assets of the partnership since it was largely indebted for its stocks of goods. The day after the charter was issued the corporation, an attorney wrote plaintiff on behalf of Criswell and Rushmeyer asking it to release them and to look to the corporation for its debt. In reply Mr. V. H. Webber, credit manager of plaintiff, requested a statement of the financial structure of the corporation. Webber's letter was never answered.

After plaintiff did not release defendants and agree to look to the corporation, the latter was never completed, so Criswell testified, and never transacted any business. However, the record shows the corporation did transact some business, with the Belknap Hardware Company and the only uncompleted part of its organization is that no process agent was named as is required by Section 571, Kentucky Statutes. Having failed to convince plaintiff it should release them and look to the corporation for the satisfaction of its debt, defendants' next effort to escape personal liability was through a dissolution of their partnership.

The record shows Rushmeyer was practically without property of value, while a financial statement given plaintiff by Criswell at the time the goods were pur-

chased reveals the latter to be worth some $35,000 above his indebtedness. On August 6, 1938, Rushmeyer and Criswell signed a writing whereby they dissolved their partnership, dividing its assets and liabilities. Under this dissolution agreement Rushmeyer took the Winchester store and assumed its liabilities, while Criswell took the Paris store with its liabilities, and each party was released from all liability to the other.

Criswell was unable to testify that a copy of this dissolution agreement was mailed to the plaintiff and he testified he did not mention same to any of its officers or employees. He relies upon the testimony of M. H. Horn to support the allegations of his pleading that the plaintiff knew of the dissolution agreement and accepted its terms. Horn testified he did not tell Webber the partnership had been dissolved, but stated "we talked about it," although he could not give within six months the time when such conversation occurred.

There is no evidence adduced that at the time defendants purchased the goods the plaintiff agreed they might return in a reasonable time all unsold or unsaleable goods after a few months' effort at selling same. Criswell and several of the defendants' employees testified such an agreement was made by some representatives of plaintiff after the goods were purchased and while same were being put on shelves in the store. Such an agreement, if made after the contract of purchase, was not supported by a consideration; therefore, it was not binding. It is expressly testified by Criswell that he could not say the agreement by plaintiff to take back the goods within a reasonable time was made at the time the contract of purchase was entered into in plaintiff's establishment. The pleading of Criswell alleges that plaintiff took back the goods from the Paris store at a 10% discount and in consideration thereof released him from all obligations of the partnership. But there is no clear proof by, or for, Criswell that such was the case. There is no doubt about the goods being taken back by the plaintiff from the Paris store at this discount, but the record is lacking in evidence on behalf of Criswell that the discount was paid plaintiff on the goods returned in consideration of its releasing him from his partnership obligations. The question may arise, why did plaintiff charge 10% for the privilege of allowing Criswell to return these goods if it was not in consideration of releas-

ing him from the partnership indebtedness? The answer is this discount was charged Criswell to cover the cost to plaintiff of rehandling the merchandise.

It was written in Henry v. Seiberling Rubber Co., 265 Ky. 241, 96 S. W. (2d) 590, 592:

"There are cases holding that a dissolution of a copartnership by the retirement of a member thereof does not, ipso facto, discharge him from liability for a pre-existing debt or a continuing obligation evidenced by the contract of the firm, in the absence of an express agreement based upon a valuable consideration. See Charleston Lumber Co. v. Friedman, 64 W. Va. 151, 61 S. E. 815; McConnell v. Hewes, 50 W. Va. 33, 40 S. E. 436. We think the better rule is, if the facts and circumstances are established by clear, positive, and adequate proof, showing the express assent or agreement of the creditor or the obligee in a continuing contract, to release the withdrawing partner, sufficient to constitute an estoppel, within the meaning of this term, the retiring partner may be so released, although not based upon a valuable consideration."

The evidence in this record does not show a release by an express contract based upon a valuable consideration, nor does it contain clear and convincing evidence of facts showing an express agreement to release Criswell which would estop plaintiff even though not supported by a consideration. As we interpret the record, it contains no evidence of an express contract releasing Criswell from his partnership liability, and the Henry case, so confidently relied upon by defendants, is not applicable.

This merchandise was bought in February, March and April and the pleading tendering its return was filed the following December 5th. Generally, it is for the jury to determine whether or not the offer to return goods sold on approval is made within a reasonable time. However, when all the facts and circumstances in a case plainly show the offer was not made within a reasonable time, the question becomes one of law for the court. Dick v. James Clark, Jr., Electric Co., 161 Ky. 622, 171 S. W. 198; International Harvester Co. of America v. Brown, 182 Ky. 435, 206 S. W. 622. The latter part of April following the purchase of this stock of merchandise, the

defendants attempted to escape personal liability by forming a corporation. That plan was unsuccessful. The first part of the following August they dissolved the partnership in the hope of releasing Criswell, the partner possessing property, from partnership liability. Likewise that plan failed, and the partners were sued on October 29, 1938. When the defendants filed answer on December 5th, for the first time they made a tender to return the stock. A recitation of these facts plainly shows the tender was not made within a reasonable time, hence it was a question of law for the court and should not have been submitted to the jury.

It might not be amiss to note that the inventory filed with the original answer of defendants aggregated $2,677.25 in goods tendered plaintiff in that pleading. Thomas C. Rawlings, an employee of the Winchester store, made this inventory on November 1, 1938. This was 35 days before the answer was filed, and he testified the inventory was depleted on the day that pleading was filed, since the store never ceased selling goods from the inventory at the rate of about $10 per day. On the trial Criswell testified the goods tendered by the answer could not be found. In order to rely upon a tender of money, the party making it must keep such tender good. 62 C. J., Section 61, p. 681. The following section of that text reads:

"A tender of specific articles, unlike a tender of money, need not be kept good; but, as the tenderer is in the position of a bailee for the creditor, he is bound, in accordance with the general rule of bailments, to exercise ordinary prudence for the preservation and protection of the chattels. He may retain possession for the tenderee or store the goods for him, but he cannot abandon the property or destroy it."

Therefore, in this instance the tender amounted to nothing. Nantz v. Lober, 1 Duv. 304, 62 Ky. 304; Woodland Cemetery Co. v. Ellison, 80 S. W. 169, 25 Ky. Law Rep. 2069.

The deposition of the defendant, Rushmeyer, was taken by the plaintiff as if upon cross-examination. Rushmeyer was not present during the trial and when plaintiff did not offer to read this deposition, Criswell offered to read it, but the court sustained plaintiff's ob-

.jections to his so doing. Criswell insists that on this appeal we should hold the trial judge erroneously excluded this deposition. But Criswell, the appellee, was entirely successful in the trial, and, of course, prosecuted no appeal, nor did he prosecute a cross-appeal, therefore we cannot consider the propriety of the ruling of the court on the introduction of this deposition. Center v. Rose, 252 Ky. 463, 67 S. W. (2d) 698; Catlett v. Johnston, 283 Ky. 120, 140 S. W. (2d) 823. On another trial, should the court again exclude this deposition and should he direct a peremptory instruction for the plaintiff as directed in the following paragraph herein, and should Criswell appeal, we will then have the question before us.

If the evidence is substantially the same on another trial, the court will direct a verdict for plaintiff against both the defendants at the conclusion of the testimony for the latter.

The judgment is reversed.