# CHARLESTON.

## BEURY *et al* v. FAY *et als.*

Submitted December 17, 1913.     Decided January 13, 1914.

1. FRAUDS, STATUTE OF—*Exchange of Land—Memorandum—Unsigned Contract.*

   An unsigned draft of a contract for exchange of lands, referred to in letters signed by authorized agents of the parties as having been prepared for execution and delivery and bearing an endorsement signed by such agents, is a sufficient memorandum of the contract under the statute of frauds. (p. 464).

2. CONTRACTS—*Mutuality of Obligation.*

    An agreement in a contract for an exchange of lands, requiring one of the parties to make a deposit of a sum of money to be paid to the other as liquidated damages, in the event of the failure of the depositor to perform the contract of exchange, rests upon a sufficient consideration and is not void for want of mutuality. (p. 465).

3. DAMAGES—*Contract Provisions—Liquidated Damages or Penalty.*

    A deposit of $10,000.00 as part of a contract for the exchange of several thousand acres of mineral and timber lands, consisting of numerous tracts bearing peculiar relations to one another and to other lands of the parties, under an express agreement for payment of the same to the other party as liquidated damages, in case of failure of the depositor to perform his part of the contract of exchange, is not a penalty or mere guaranty of performance, but a sum agreed upon as compensation for the breach of the contract. (p. 465).

    (WILLIAMS, JUDGE, absent.)

Appeal from Circuit Court, Kanawha County.

Bill by J. E. Beury and others, as administrators, etc., against H. H. Fay and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*Holt, Duncan & Holt,* for appellants.

*Brown, Jackson & Knight,* for appellees.

POFFENBARGER JUDGE.

This appeal is from a decree dismissing a bill filed against the depositaries of a $10,000.00 fund, under a contract forfeiting it as liquidated damages for non-performance of the depositor's covenants or agreements imposed by the contract, and the covenantee to whom the fund was paid after such default, to compel an accounting and repayment of the money.

The alleged violation of the trust rests upon the following claims: (1) non-execution or non-delivery of the contract by the party in whose favor the deposit was made; (2) violation of the trust, (assuming the contract to have been executed), in the treatment of the fund as liquidated damages and not as a penalty; and (3) invalidity of the deposit provision of the contract for lack of consideration.

The agreement was one for exchange of mineral and timber lands, acre for acre, each party covenanting to convey to the other 11,271 acres, part of which, 3,565.1 acres, was actually conveyed by each, on the date fixed for delivery of the contract, January 30, 1902. The deposit was made merely as security for performance of the contract as to the residue of the land on the part of Jos. L. Beury, one of the parties, according to the contention of the plaintiffs, his administrators, and as liquidated damages or compensation for his breach of the contract, according to the contention of the defendants, the firm of Brown, Jackson & Knight, the depositaries, and H. H. Fay, R. H. Crozier and Charles Catlett, trustees of the Gauley Coal Land Association, and their unknown *cestuis que trustent,* and the Gauley Coal Land Company, successor of the Gauley Coal Land Association.

For the fund in question, the depositaries executed the following receipt, expressing the purpose and terms of the trust: "Received January 30th, 1902, of Jos. L. Beury, of Fayette County, West Virginia, ten thousand dollars in pursuance of and in accordance with the third section of an agreement made between the Gauley Coal Land Association and J. L. Beury dated in the body of said agreement on October 31st, 1901, as modified with reference to date by an endorsement on said agreement, and at the close thereof signed by the said parties thereto." The "third section of an agreement" referred to in it, reads as follows: "It is of the essence of this contract that the exchange above provided for shall be completed within six months from the date hereof; and it is agreed that said Beury is at or before the time of passing papers on said initial exchange of about 3,565.1 acres to pay to Brown, Jackson & Knight of Charleston, West Virginia, the sum of ten thousand dollars, which is to be held by them and is to be forfeited and paid to said association as liquidated damages if said Beury fails to complete within said six months his agreements herein contained; but if he duly performs his said agreements, said Brown Jackson & Knight are to repay said ten thousand dollars to him." The modifying endorsement on the agreement, to which reference is made in the receipt, reads thus: "This agreement signed, delivered and accepted by the parties thereto as of Decr. 1st, 1901, and with the agree-

ment and understanding that it is to take effect as and of that date instead of the date of Oct. 31st, in the body of this paper. J. L. Beury, by D. C. T. Davis, Jr. Gauley Coal Land Assn., by John Rapelje.''

D. C. T. Davis had been the attorney and agent of Beury throughout the negotiations leading up to the deposit of the money and partial exchange of lands. John Rapelje was a civil engineer in the employ of the land association, and acted for it in many important transactions pertaining to the negotiations between it and Beury. To him was entrusted the selection of the tracts of the association lands for the exchange, and also the acceptance, as to location and quality, of the Beury lands offered for them.

Execution of the contract in duplicate with delivery of a complete and formally executed copy to each of the parties was contemplated and several copies were prepared, as early as September, 1901, all dated Oct. 31, 1901, one of which was signed by Beury, prior to Nov. 4, 1901, and another by the trustees of the association prior to Dec. 5, 1901. The one signed by Beury was before the parties on the occasion of the exchange of deeds and deposit of the money and the endorsement extending the time for full performance was made on it. This copy seems to have been delivered to Rapelje, but the other one signed by the trustees of the association seems not to have been delivered to Beury or his agent. Davis swears positively it was not and there is no positive testimony that it was. Whether Beury himself was present at the time of the exchange of deeds is uncertain. There was no demand for the copy by him or his agent after the exchange. The contract was never completed and Beury died about a year after the deposit of the fund. Before the meeting for the exchange of deeds and deposit of the money, Davis made repeated requests that a copy be signed by the trustees for delivery at the meeting and he says he made an unavailing demand upon Rapelje for it at the meeting. But there is no evidence of any subsequent demand. While the completion of the execution of the contract by the trustees is shown, no notice thereof to Beury or his agent appears. One of the trustees disapproved the plan of exchange agreed upon, but finally yielded, and there is considerable evidence of a reluctant acceptance of

Beury's proposition. This is relied upon as proof of intent on the part of the association to attempt to bind Beury without binding itself.

Covering a period of about a year, the negotiations culminating in the transaction of Jan. 30, 1902, were conducted in part by correspondence between Davis and C. A. Ellis, Secretary of the accociation, and Davis and Rapelje, and personal interviews between them, at times between Davis and Ellis and at others between Davis and Rapelje. The terms of the contract as written and signed were all fully agreed upon. A letter from Ellis, transmitting Beury's copy to Davis, shows it was prepared by the association's attorney, and notifies him of the transmission of another copy to the trustees for their signatures, and there is much additional correspondence from which all the terms are ascertainable. Ellis, the association secretary, and Rapelje, its field agent, conducted all the negotiations on the one side. They were the only agents or representatives of the association with whom Davis had any direct communication. Partial execution of the plan or scheme embodied in the contract, the terms of which they had settled, fully established both their apparent and actual authority, and the draft of the agreement, though not signed by the trustees, read in the light of the letters of these agents, the endorsement on Beury's copy signed by Rapelje and the acceptance of the deed or deeds for the lands exchanged, constituted a sufficient memorandum within the meaning of the statute of frauds. To the draft of the contract there were annexed schedule A, showing the lands to be conveyed by the association, shedule B, showing the lands to be conveyed by Beury, schedule C, showing association lands to make up the initial exchange, and schedule D, showing the lands Beury was to put into the initial exchange, all of which schedules were referred to in the draft. Separate papers connected by references may be used as such a memorandum and they need not all be signed by the party or his agent. It suffices if one, connecting the others by references, is signed. 20 Cyc. 278, citing numerous authorities. And parol evidence showing the circumstances under which the contract was made and the subject matter and parties and explaining technical terms of the memorandum is admissible. 20 Cyc. 318. The statute

does not require a formal contract. *Atkinson* v. *College,* 54 W. Va. 32; *Fleming* v. *Holt,* 12 W. Va. 38. Nor is delivery of the contract or memorandum essential. *Moore, Keppel &· C.* v. *Ward,* 71 W. Va. 393; *Reel* v. *Reel,* 59 W. Va. 106, 110; 20 Cyc, 277. Moreover verbal contracts are not forbidden by the statute of frauds. They are voidable, not void. *Moore, Keppel & Co.* v. *Ward,* cited; *Atkinson* v. *College,* cited; *Fleming* v. *Holt,* cited. The statute simply affords means of avoidance by denial of remedy when it is properly invoked. In view of these principles, it is impossible to say no contract between Beury and the association was made. Of course the formal contract signed by the trustees of the association would have been cleaner and more convenient evidence of it and Beury was entitled to it. He was in a position to enforce delivery of it but failed to do so. His deposit of the money without it was a voluntary act, waiving his right to the better evidence.

The deposit having been part and parcel of the contract, there was no lack of consideration for it nor want of mutuality. *Rease* v. *Kittle,* 56 W. Va. 269, 272, 273.

The contract and receipt of the depositaries both describe the $10,000.00 as liquidated damages, and the references to it in the correspondence are not inconsistent with this designation. They do not define it at all and the circumstances disclose nothing reflecting intent to treat the fund as anything other than what it is stated to be in the contract. Beury was exceedingly anxious to make the initial exchange in order to solidify certain territory he was endeavoring to sell, and the association representatives doubted his intention as to the completion of the contract. Some of the land he agreed to convey did not belong to him, but he had options on it and it lay within the general boundary principally owned by the association. Beury wanted the 3,565.1 acres of association land badly and the association greatly desired the exchange of the additional land mentioned in schedules A and B. A claim of actual damage in excess of the sum deposited is founded upon a declaration of Beury or his agent as to the relative value of the lands to be exchanged, but this would be slight and perhaps insufficient evidence of the quantum of damages. Whether the association or its successor ever acquired the

lands it expected to obtain through Beury, or what it would cost to obtain them, is not shown. Nor does it appear whether the cost of procuring them was increasing. The designation of the sum to be forfeited as liquidated damages is not conclusive. 19 Am. & Eng. Ency. L. 400. If the actual damages resulting from the breach were readily ascertainable and the forfeiture flagrantly disproportionate thereto, the latter might well be treated as a penalty although denominated liquidated damages by the contract. *Friedman* v. *Lumber Co.*, 64 W. Va. 161; 19 Am. & Eng. Ency. L. 402 to 410. But whether the damages contemplated were at all or readily ascertainable the record fails to disclose. As to that the evidence is very meager. A decisive element appears, however, in the actual deposit of the money under a stipulation for payment of it in case of breach. It is generally regarded as conclusive. 19 Am. & Eng. Ency. L. 413; 1 Sedg. Dam., sec. 414. Deposit of the money and the agreement that it be paid over puts the question of intent beyond the shadow of a doubt. A mere agreement to forfeit a certain sum as liquidated damages, read in the light of other portions of the contract, its subject matter and the situation and purposes of the parties, may be found, upon analysis, to be an inaccurate expression of their intention. But a deposit of the stipulated sum under an agreement to pay it leaves no room at all for inquiry as to the intention, unless the disproportion between the forfeiture and the actual damage is so great as to make the agreement an unconscionable one. Here the subject matter of the contract was land, consisting of numerous tracts of large aggregate areas and peculiar in their relations to one another and to other property of the parties. Its actual value was no doubt far beyond the $100,000.00 mark and some of the tracts had peculiar or strategic values, due to their relation to other properties. To say, in view of these facts, the actual damages were readily ascertainable, the deposit was disproportionate thereto or the agreement as to the damages unconscionable, would express no more than a bare surmise or conjecture.

In our opinion the contract rests upon an adequate consideration and was so far executed, though informally, as to bind both parties and the sum of money deposited was the

amount agreed upon as liquidated damages.   Accordingly, we affirm the decree complained of.

*Affirmed.*