# CHARLESTON.

Jacob Yost v. John Wills *et als.*

Submitted March 16, 1920.    Decided March 23, 1920.

1.  Damages—*Deposit by Purchaser of Land Construed as Liquidated Damages for Breach.*

    A sum of money deposited in a bank by the vendees in a conditional contract of sale of land, subject to the order of their attorneys, to be credited upon the cash installment of purchase money, in case the vendees should consummate the contract, upon compliance by the vendor with all conditions to be performed by him, and to be forfeited to him in the event of wrongful failure of the vendees to take and pay for the land, is presumptively a sum agreed upon by the parties, as liquidated damages, to be paid to the vendor, in case of breach of the contract by the vendees, unless it appears to be disproportionate to the probable damages resulting from such breach, and, in the absence of proof showing it to be so, it will be deemed and held to have been so agreed upon. (p. 75).

2.  Equity—*Suit for Liquidated Damages is Cognizable in Equity.*

    As the right conferred by such a stipulation does not accrue by forfeiture and the sum so agreed upon is not a penalty and the remedy at law is inadequate, a demand for payment of such sum is cognizable in equity. (p. 75).

86 W. Va.

3.  VENDOR AND PURCHASER—*Contract Construed to Limit Purchas-
    er's Right to Refuse to Take Land After an Extension of*
    *Time for Perfection of Title.*

    A contract of sale of land, so drawn as to give the vendee
    a right of election to take or refuse to take the land, on fail-
    ure of the vendor to tender perfect title within a specified pe-
    riod, and on failure of the vendee's attorneys to approve the
    title on or before a named date, and then to extend the option
    of the vendee, on his election to take it, after default by the
    vendor, and the time for perfection of the title, with right in
    the vendee again to refuse to take it, and closing with a clause
    forfeiting a deposit made by him, on his failure to take the
    land, after approval of the title, so construed as to give effect
    to all of its provisions and terms, limits the right of the vendee
    to refuse to take the land, after having elected to take it and
    thus extend the time for perfection of the title, to a refusal
    to take, in the manner prescribed by the extension clause, be-
    fore the title has been perfected and approved by his attorneys,
    and binds him, in the event of his failure to terminate the
    agreement before perfection and approval of the title.  (p. 76).

Appeal from Circuit Court, Raleigh County.

Bill by Jacob Yost against John Wills and others. From a
decree of dismissal, plaintiff appeals.

*Reversed, and decree for plaintiff.*

*Bumgardner & Preslon* and *Rudolph Bumgardner,* for appel-
lant.

*J. W. Maxwell,* for appellees.

POFFENBARGER, JUDGE:

The bill dismissed by the decree appealed from in this cause
sought a decree for payment to the plaintiff, of a sum of money
deposited in a bank, under a contract of sale of real estate, upon
the theory that it was a sum agreed upon by the parties to the
contract, as liquidated damages, to be paid to the vendor, in the
event of a breach of the contract by the vendees. Alleging tender
of full and complete performance of the contract, on the part
of the defendants, the bill prays for a decree adjudicating title
to the fund, $13,800.00, and the accumulated interest thereon,
in the plaintiff, and requiring the bank to make payment thereof
to him.

The contract was for the sale of several tracts of land, having an aggregate area of 6,895.26 acres, in 3,781.17 acres of which the surface and minerals were both included, and in the balance of which only the minerals were included. The price agreed upon was $40.00 per acre, making a total of $275,810.40, of which $75,810.40 including the deposit of $13,800.00 was to be paid July 1, 1917, and the balance in four annual installments of $50,000.00 each. The contract was dated, April 7, 1917, and the provisions thereof upon which the solution of the problem presented here largely depends read as follows:

"And the parties of the second part have this day deposited in the Bank of Raleigh the sum of $13,800.00 to be held by the said Bank of Raleigh, subject to the order of McGinnis & Hatcher, attorneys, until the conditions hereinafter mentioned shall be complied with. That is to say, the said Yost promises and binds himself to be ready to tender within a period of thirty (30) days from this date, to the firm of *the firm of* Mc-Ginnis & Hatcher attorneys of the parties of the second part, a good and sufficient title which shall be approved by them, and upon the approval of such title by the said attorneys, the $13,800.00, deposited in The Bank of Raleigh, as aforesaid, shall be paid over to the said Yost by the said-McGinnis & Hatcher, to be credited by *the* Yost on the payments for the said property hereby agreed to be sold and conveyed as hereinafter set forth; and the said parties of the second part shall have until the 1st day of July, 1917, to complete the first payment on said property, the said land and minerals this day purchased to be paid for as follows

The sum of $75,810.40, including the $13,800.00 above mentioned, to be paid on the 1st day of July, 1917, and the residue of said payments to be made in four (4) *annuals* payments of $50,000.00 each, dated July 1st, 1917, with interest thereon at 6% payable semi-annually on the 1st day of January and July, said deferred payments to be evidenced by bonds signed by the purchasers of said property and secured by deed of trust on the property above mentioned."

"It is nevertheless understood and agreed that if the title to the said property is not approved by the Attorneys for the said parties of the second part on or before the said first day of July,

1917, then this contract is to be null and void, and the said money so deposited in the Bank of Raleigh shall be paid over to the said parties of the second part."

"It is further distinctly understood that if the party of the first part fails to tender to the Attorneys for the said parties of the second part a good and sufficient title to the property, free from all incumbrances, within the thirty (30) days hereinabove referred to, then the said parties of the second part shall have the right to elect whether they take the said property hereinabove described upon the terms herein set forth, or refuse to take it, and if the said parties of the second part refuse to take said property under this clause of this agreement, then the deposit hereinabove referred to shall be repaid to them upon said refusal and this contract shall be at an end. If, however the said party of the first part fails to secure the necessary signatures, corrections and other things necessary to perfect the said title within the said thirty (30) days and the said parties of the second part elect to take the said property after the expiration of said thirty (30) days, then any number of days after the expiration of said thirty (30) days which the said Yost may require to perfect said title, as aforesaid, shall be added to the time and the final day of purchase and *consummation* of this sale shall be extended correspondingly for the same number of days, subject however, to the following understanding between the parties. That is to say: any time after the expiration of the said thirty (30) days the said parties of the second part may refuse to take the said property and collect from the said Bank the money deposited with it as aforesaid, by giving to the said party of the first part ten (10) days written notice of their intention so to do said notice to be mailed to the said party of the first part at his address at Staunton, Virginia, by registered mail."

"It is further understood that should title be tendered by the party of the first part and approved by the Attorneys of the parties of the second part, and the parties of the second part thereafter fail to comply with the other terms of this agreement by the purchase property, under the conditions heretofore set forth, that the $13,800.00, to be delivered to the party of the

first part upon the approval of title shall be forfeited to the said party of the first part, and this contract shall be at an end."

In the resistance of the effort to reverse the decree, and as ground for its support, lack of jurisdiction in equity is urged. Since the bill treats the money in question as a sum deposited under an agreement that it should stand and be treated as liquidated damages, in case of a breach of the contract by the vendees and depositors, and be paid over to the vendor, as such, in such case, the bill does not seek enforcement of a forfeiture. Its purpose is procuration of a decree for payment of a fund which, by contract, belongs to the plaintiff.    Hence, the authorities denying jurisdiction in equity to enforce forfeitures are not applicable.    Equity jurisdiction in cases of the kind alleged in the bill was acknowledged and exercised in *Bucklen* v. *Hasterlick*, 155 Ill. 423.    It was held in that case, that the demand asserted by the vendor was not predicated upon the theory of forfeiture and that his title to the fund did not accrue by forfeiture. In this view of the nature of the demand, the court was fully sustained by *Depree* v. *Bedborough*, 4 Giff. 479 and by the text in *Fry on Specific Performance*, 3rd Ed. 1460.    In all decisions dealing with stipulations for payment of liquidated damages, such demands are held not to be penalties nor forfeitures.    They are treated as demands for money agreed upon as compensation for injuries.    Such compensation is in no sense a forfeiture or penalty, when it makes good a property or pecuniary loss.

The remedy at law is not adequate, nor appropriate.    If the vendor's claim is well founded, he has right to a specific fund, not in the hands of the real defendants.    He cannot obtain it by suing them at law, though he might obtain an equivalent sum. The alternative, however, is not the measure of his right.    He is entitled to the particular fund deposited conditionally for his benefit.    If the bank in which it is deposited were holding it as a stakeholder, he might be able to sue the bank alone for it at law, but the bank, not holding it under any agreement between the vendor and vendees, to which it is a party, is not, for that reason, a stakeholder.    It is a mere depository of the money, holding it under no special agreement.    To reach the fund and

obtain possession of it, only the flexible processes of a court of equity are available and efficacious.

The bill admits default on the part of the plaintiff. He was not ready "to tender within a period of thirty (30) days" from the date of the contract, "to the firm of McGinnis and Hatcher, attorneys of the parties of the second part, a good and sufficient title" which they should approve. The consequence of such failure is not left to surmise, speculation or interpretation of the contract. It is plainly stated in the clause providing for a qualified extension, a contract upon altered conditions or an option in the vendees. It gave the vendees right of election thereafter to take the property or not. Hence, it put it in their power wholly to release the $13,800.00 deposited. It expressly provided that, on their election to refuse the property, the money deposited should be paid to them and the contract wholly terminated. If the election to take, after default on the part of the vendor, provided for in this clause, had been made absolute or left unqualified, the status of the deposit would have been the same after such election as it was before. But, in the provision so made, the election to take was limited or equalified so as to make it, in legal effect, a mere option in the vendees to take it or not as they should see fit; for it stipulated that, in the event of such election, there should be an extension of time for the perfection of the title, subject to right in the vendees, "any time after the expiration of the said thirty (30) days" to "refuse to take the said property and collect from the said Bank the money deposited with it," by giving ten days notice in writing of their intention so to do. The provision for an election to take after default, read in connection with this limitation or qualification, conferred upon the vendees right to refuse the property and take down the deposit, after having elected to take it. It is impossible to read it and interpret it in any other way, if the thirty day period therein referred to, is the thirty day period next succeeding the date of the contract, and it must be, because no other such period is anywhere mentioned in the contract. The right to elect to take and then to refuse, so conferred, made it optional with the vendees, whether they would ultimately take and pay for the property. The default gave them such an option for immediate exercise, and the purpose of the latter por-

tion of the clause, providing for election to take and an extension of time, seems to have been indefinite continuation of the option, for that is its manifest effect, if its terms are to govern its interpretation, as they must, unless the words of limitation can be given a restricted function or scope of operation.

They are limited by the last clause, if it is to have effect according to its terms.  It necessarily put an additional element or factor into the extension or option clause, by fair and reasonable, if not necessary, implication arising from its terms.  It provided that, if title should be tendered by the vendor and approved by the attorneys of the vendees, not within thirty days nor any other specific period, and the vendees should thereafter fail to comply with the other terms of the agreement, "under the conditions" thereinbefore set forth, the deposit should go to the vendor.  The conditions thereinbefore set out included those dealt with or made by the option clause as well as the contract clause.  The option clause contemplated and had for one of its salient purposes, perfection of the title, perfection thereof for approval and for a contemplated contract, though that clause is silent as to approval and obligation on the part of the vendees to consummate the contract from which they might be and were released by the vendor's default.  Being so, it is incomplete and indefinite.  What was to happen in case the vendor should tender a title approved by the attorneys of the vendees, at any time within their option and before termination thereof by notice?  Could they reject it and still hold their option?  If so, what was the purpose of perfection of the title?  The clause nowhere countermands the authority of the attorneys to approve a perfect title, which had previously been conferred, nor did it break their hold upon the deposit.  The last clause assumes their right to approve title at any time.  It imposes no time limit.  That limit is found in the option clause, by implication.  They could approve until the vendees should elect to terminate their option by ten days written notice.  If, before such termination, perfect title should be tendered and approved, the contract terminated by the vendor's default was restored. The last clause necessarily means this, if its words are to have full and unrestricted operation.  So interpreted they fit in with all of the conditions previously written.  If the vendor should comply with the re-

quirement to furnish good title within thirty days from the date of the contract, and the vendees should fail to perform, the former was to have the deposit. If, through the vendor's fault, the original contract of purchase should fail, and he should subsequently furnish good title and it should be approved, before termination of the option, and the vendees should fail, then the deposit should go to him. Omission of a time limit on approval in the last clause is highly significant. That is the only clause in the contract that purports to make an award of the deposit to the vendor, as and for his damages for breach of the contract by the vendees, and it makes his right thereto depend upon approval without a time limit, but, of course, within the life of the agreement. The understanding limiting the effect of an election to take after default, is itself so limited by the last clause, that the right of subsequent election not to take had to be exercised before approval of the title, by termination of the option.

This construction is based upon all of the terms and provisions of the contract and gives every portion of it reasonable and intelligent effect, scope and operation, agreeably to two well settled rules of interpretation; and accomplishes the end and purpose of all interpretation of contracts, ascertainment and effectuation of the intent and purposes of the parties.

The defendants took the benefit of the option provision of the contract, by a notice dated, June 30, 1917, reciting the vendor's default and electing nevertheless to take the property. Their attorneys approved the title not later than July 2, 1917, and, notwithstanding such approval, they refused to accept a deed tendered by the vendor and also to make the cash payment of purchase money and obligate themselves to pay the deferred installments thereof. Hence, the plaintiff's right to a decree is clear, if the fund in question was deposited upon an agreement that it should be paid and accepted as the damages for the breach of the contract.

In amount, the deposit is about five per cent. of the contract price of the land, wherefore it cannot be reasonably regarded as disproportionate in amount, in the absence of evidence disclosing or indicating the actual amount of the damages, and there is none. If there had been no deposit, and this amount had been agreed upon as a sum to be paid as liquidated damages, there

might be some uncertainty as to the intention of the parties. But the deposit of the agreed amount, placing it beyond the dominion and control of the vendees to whom it had belonged, taken in connection with the stipulation for payment thereof to the vendor, is decisive of the question. *Buery* v. *Fay,* 73 W. Va. 460; *Pinckney* v. *Weaver,* 216 Ill. 185; Sedgewick, Damages, 9th Ed., sec. 414; 19 Am. & Eng. Ency. L. 413.

Upon the principles and conclusions here stated, the decree complained of will be reversed, a decree entered here requiring the Bank of Raleigh to pay to Jacob Yost, the plaintiff in this cause the said sum of $13,800.00, with the interest accumulated thereon, if any, and the defendants John H. Hatcher and W. H. McGinnis, partners as McGinnis and Hatcher, to give their authority for such payment, by a sufficient order signed by them or one of them, if required by said bank, and the cause remanded. Costs in the court below as well as in this court will be decreed to said Yost.

*Reversed, and decree for plaintiff.*