### HYMAN J. LEVY *vs.* FRANCIS PEABODY & another.

Suffolk.    January 20, 1921. — March 9, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Landlord and Tenant,* Construction of lease, Landlord's right to sell reversion. *Evidence,* Extrinsic affecting writings.

The owner of certain real estate made a lease of it in writing containing the following provisions: "And Whereas it is the intent of the Lessee, with the consent of the Lessor, forthwith to make various improvements and alterations in and to the leased premises at his own expense; And Whereas the Lessor hereby reserves the right at any time after the expiration of one year of the term hereof, for the purpose of a sale of the premises, to terminate this Lease by giving to the Lessee sixty days' written notice of his intention so to do; and it is further mutually agreed that if and when the Lessor shall have any offer for the purchase of said premises which he is willing to accept, he will, prior to accepting the same, give the Lessee an opportunity to purchase the premises by notifying him in writing of such offer, and giving him seven days thereafter in which himself to make a better offer than the one so received." *Held,* that

(1) The provisions above quoted were free from ambiguity and not to be affected by previous negotiations of the parties;

(2) The lessor had a right to convey the premises, subject to the lease, without first giving to the lessee an opportunity to purchase;

(3) One who purchased the premises from the lessor subject to the lease was not bound to convey them to the lessee upon his offering to pay therefor a sum larger than that which the purchaser had paid.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 23, 1920, and afterwards amended, by the lessee of premises numbered 1359–1367 on Washington Street in Boston, under a lease described in the opinion, against Francis Peabody, the lessor, and the Boston Penny Savings Bank, to whom the defendant Peabody had sold and conveyed the premises in alleged violation of the provisions of the lease.

Allegations of the amended bill were, in substance, that for

twelve years previous to the execution of the lease, the plaintiff had conducted a hardware business on the premises and had acquired a good will in connection therewith; that at and before the time the lease was entered into, the plaintiff represented to the defendant Peabody that he desired to make costly improvements by adding a new front to the building and an addition in the rear and by making extensive alterations to the interior, and further that he could not afford, under the circumstances, to take a lease for only five years, unless it contained a provision that the lessor would not sell the premises during the term except to the plaintiff or unless the plaintiff had an opportunity to purchase, thereby reserving to the plaintiff an opportunity to negotiate with the defendant Peabody up to the last day of the lease for a purchase, or an extension of lease; that the defendant Peabody thereupon stated to the plaintiff that he would give the plaintiff by the lease the right to purchase the premises prior to any one else, that he would rather sell to the plaintiff than any one else on account of the plaintiff's long occupation and because he knew him; that in consequence of that understanding, and with the intention of carrying it out, the provisions of the lease, described in the opinion, were introduced into the lease; that previous to November 4, 1920, the defendants entered into negotiations with one another for a sale of the premises and on that date an agreement in writing was made between the defendant Peabody and one Henry D. McKie for a sale to McKie for $30,000, the, "premises . . . to be conveyed on or before December 1, 1920, or at a prior date if the party of the second part so desires, by good and sufficient quitclaim deed of the party of the first part conveying a good and clear title to the same, free from all encumbrances except present tenant who holds a lease which expires on January 1, 1921, and other tenants at will;" that on November 5, 1920, the defendant Peabody notified the plaintiff in writing that he had "entered into an agreement for sale of the premises, stating, 'Papers will probably be passed within a few days, the purchaser being the Boston Penny Savings Bank. Your lease expires on January 1, 1921, and the conveyance will be subject to this lease. I notify you of the sale at the present time so that you may have the fullest possible notice of the change. All subsequent payments may be made direct to the Boston Penny Savings Bank;'" that

on November 8, the defendant Peabody orally stated to the plaintiff that the purchase price to be paid by the defendant bank was $30,000; that on November 6 the defendant Peabody conveyed the premises to the defendant bank, it being expressly stated in the deed that "this conveyance is made subject to a lease to H. J. Levy, dated December 29, 1915, and expiring December 31, 1920;" that on November 11 the plaintiff notified both defendants that he had learned of the sale and conveyance to the defendant bank and that he was willing to pay $30,001, for the premises and to receive a conveyance for that price, which he then demanded, and that conveyance was refused. The prayers of the bill were in substance that the defendants be ordered to convey the premises to the plaintiff "upon the plaintiff paying to the defendant bank $30,001, with the further sum of $1 to the defendant Peabody."

The defendants severally demurred. The demurrers were heard by *Jenney*, J., by whose order there were entered interlocutory decrees sustaining the demurrers and a final decree dismissing the bill. The plaintiff appealed.

*S. L. Whipple*, (*A. M. Beale* with him,) for the plaintiff.

*F. W. Dallinger*, (*G. K. Richardson* with him,) for the defendant bank.

*E. K. Arnold*, for the defendant Peabody.

CROSBY, J. This is a bill in equity brought to enforce specific performance of an agreement contained in a written lease of real estate, situated on Washington Street in Boston, and given by the defendant Peabody to the plaintiff. The term of the lease was for five years from the first day of January, 1916, and contains, among others, the following provisions:

"And Whereas it is the intent of the Lessee, with the consent of the Lessor, forthwith to make various improvements and alterations in and to the leased premises at his own expense;

And Whereas the Lessor hereby reserves the right at any time after the expiration of one year of the term hereof, for the purpose of a sale of the premises, to terminate this Lease by giving to the Lessee sixty days' written notice of his intentions so to do; . . . and it is further mutually agreed that if and when the Lessor shall have any offer for the purchase of said premises which he is willing to accept, he will, prior to accepting the same,

give the Lessee an opportunity to purchase the premises by notifying him in writing of such offer, and giving him seven days thereafter in which himself to make a better offer than the one so received."

The provisions of the lease above recited and upon which the rights of the parties depend are plain and free from ambiguity.

The case is governed in principle by the decision in *Callaghan* v. *Hawkes*, 121 Mass. 298, which is decisive of the rights of the parties. The pertinent clauses in the lease there involved were in these words: "And the said Hawkes shall have the right to sell and dispose of the farm and buildings at any time covered by this lease, by giving said Callaghans two months' notice thereof, and also by giving them the privilege of purchasing at the same price any other person may offer." "And said Callaghans, in event of a sale of the property herein leased, shall have the privilege of taking off the crops." Chief Justice Gray, who wrote the opinion, speaking for the court said: "The clause in question, in form and necessary legal construction, is enabling and not restrictive, and confers upon the lessor a right which he would not otherwise have had. Independently of, and notwithstanding this clause, he may sell the reversion. The whole effect of the clause was to enable him to terminate the lease, and sell the whole estate, first giving the lessees the opportunity of purchasing. This construction is fortified by the final clause, which allows to the lessees, in case of sale, the privilege of taking off the crops."

The cases of *Blanchard* v. *Ames*, 60 N. H. 404, *De Vitt* v. *Kaufman County*, 27 Tex. Civ. App. 332, and *Foley* v. *Constantino*, 86 N. Y. Supp. 780, are in accord with *Callaghan* v. *Hawkes*. See cases cited in note L. R. A. 1915 C 236, 237, 238. The demurrers were properly sustained, accordingly the entry must be

*Decree affirmed.*