THE PEERLESS DEPARTMENT STORES, *Inc. v.* GEORGE M.
SNOOK COMPANY

(CC 637)

Submitted January 8, 1941. Decided February 25, 1941.

*Ralph L. Miller, McCamic & Clark* and *W. R. Tinker, Jr.,* for plaintiff.

*J. M. Ritz* and *Frank A. McMahon,* for George M. Snook Co.

*D. Paul Camilletti,* for Max E. Kaufman and Maurice Kaufman.

LOVINS, JUDGE:

The Circuit Court of Ohio County, of its own motion, has certified certain questions arising upon its action in sustaining the joint and several demurrers of defendants to plaintiff's original and amended bills. The direct ques-

tion involved on this certification is whether The Peerless Department Stores, Inc., exercised an exclusive option, for the purchase of business property in Wheeling, reserved to it in a lease covering such premises, within the time provided therefor.

On December 11, 1933, plaintiff lessee, by written agreement of that date, recorded on February 8, 1934, and August 8, 1934, leased a certain store building in the City of Wheeling from George M. Snook Company for a term of ten years at a stipulated monthly rental, beginning March 1, 1934. The lease provided that after the first five years of its term, lessor should have the right to sell the premises, "but any time the lessor shall receive an offer to purchase said property at a satisfactory price, the lessee shall have the first and exclusive option for seven days after receiving notification in writing thereof, to purchase said property from the lessor at the same price and on the same terms offered to the lessor;". There was also a provision that the lessee had the right to install a new front on the first floor of the building to cost not more than $5,500.00, with the further provision for reimbursing lessee for one-half of the cost under certain conditions. The new front and other improvements were made by lessee, at a total cost of $13,800.00.

On July 31, 1939, plaintiff received written notice from the lessor that it "received on the 21st day of July, 1939, a written offer to purchase said property at a satisfactory price," and that said offer had been accepted subject to the exclusive option for seven days as given to the lessee by the terms of the lease. The notice further stated that the amount offered was $80,000.00, but the name of the offeror was undisclosed. The notice concluded with a statement that in compliance with the terms of the lease, the lessee would have first and exclusive option for seven days from date of notice at the same terms as contained in the offer. The offer itself is set out in full in the notice, with spaces for the name of the offeror left blank. The offer includes a provision for the payment to the Snook Company of $500.00, in the event of noncompliance, as liquidated damages, if the offerors should

"by reason of their inability to effect suitable and proper financial arrangements, fail to purchase said property."

The notice was returned on August 1st to the Snook Company by lessee's attorney, R. L. Miller, without acknowledgement of the receipt thereof, with the explanation that the same was insufficient in that "inasmuch as these papers fail to reveal the identity of the purchaser, we have no way of ascertaining anything concerning this offer or its *bona fides.*"

On the day following, August 2nd, Miller received a registered letter from D. Paul Camilletti, as counsel for the offerors, advising him that "the said offer is *bona fide,* complete and binding upon the said offerors," also that the deposit of $1,000.00 with unnamed trustees, as provided for in that portion of the offer relating to the payment of liquidated damages, had been made in his presence, and that he was one of the unnamed trustees. The letter concludes by saying that the writer is constrained to keep the identity of the offerors undisclosed "at this time" and that seven days from July 31, 1939, offerors will be compelled to purchase unless Peerless Department Stores exercises its option.

Miller replied on August 3rd, "I am quite willing to accept your statements, and therefore ask no further proof of the *bona fides* of the offer. However, this information having come to us today, August 3rd, it is my opinion that we have had no sufficient legal notice until this day, and we have, accordingly, seven (7) days from this date in which to exercise * * * the option * * *." This letter added that plaintiff would accept service of the notice as of this date, August 3rd, if the same was again presented.

On the same date, by registered mail, Camilletti advised Miller that the notice of July 31st was sufficient, and that after the expiration of seven days therefrom, his clients would have a right to purchase.

Nothing further transpired until August 9th, when plaintiff, by letter of that date, informed the Snook Company that it thereby exercised its exclusive option to purchase the leased premises, enclosing a certified check for $1,000.00 for the purposes hereinbefore explained. The

Snook Company, however, returned the certified check on August 10th and entered into a real estate sales contract with the original offeror, on August 14, 1939. This contract was recorded in Ohio County on August 15, 1939, and the terms of the original offer were departed from in certain respects. Therefore, treating this recorded contract as a new offer, plaintiff notified the Snook Company on August 17th, by letter, that it had decided to purchase the leased premises under the terms of the recorded sales contract. On the day following, plaintiff tendered $5,000.00, the down payment required by the recorded contract and delivered a letter to the Snook Company, requesting a deed of conveyance.

By letter of August 18th, the attorney for the Snook Company, Frank A. McMahon, declined to accept the tender of $5,000.00, affirming his position taken at the time of the return of the $1,000.00 deposit, that plaintiff had failed to exercise its option.

On August 18, 1939, plaintiff instituted this suit and on the same day filed notice of lis pendens; however, on August 31, 1939, the Snook Company executed a deed for the premises leased to Maurice and Max Kaufman, recording the same on September 1st.

The Snook Company then notified plaintiff on August 31st to vacate the premises within six months from September 1, 1939; plaintiff received also a similar notice from the Kaufmans.

The corporate action of the Snook Company in accepting the offer of the Kaufmans, subject to the exclusive option in plaintiff, and authorizing the execution of a sales contract and general warranty deed to the Kaufmans, is evidenced by resolutions adopted at stockholders' meetings on July 29, 1939, and August 14, 1939.

The prayer of the bill sought (1) to set aside the deed of August 31, 1939; (2) to compel George M. Snook Company to perform the agreement entered into in the lease of December 11, 1933; (3) to protect plaintiff's right to purchase, as obtained by the exercise of its option; (4) to require the Kaufmans to make a deed to plaintiff, or appoint a special commissioner for that purpose in lieu of

their failure to do so; (5) to apply rent accruing after August 31, 1939, as part of the purchase money to be paid by plaintiff; and (6) temporary and permanent injunctions to prevent defendants from collecting rent, or interfering with plaintiff's enjoyment of possession.

The demurrer is based upon the ground that no basis is shown for equitable relief because the bill shows on its face that a *bona fide* offer was received and communicated to plaintiff and that the same was accepted as *bona fide* on August 3rd; also that if the notice was insufficient in the beginning, it could not be effective as of August 3rd; that the bill shows that plaintiff did not comply with the provisions of the lease as to exercising the option; and that the bill contends the offer of Kaufmans and the conveyance to them are both *bona fide* and pretended.

The action of the trial court in sustaining the demurrers as well as in denying injunctive relief, appears from memoranda made a part of the record, to have been based upon the holding that plaintiff had no rights to assert under the "refusal" clause, in that seven days after the original notice, the right of plaintiff to exercise its exclusive option to purchase expired. It is admitted by the trial court that rights accruing to plaintiff under said clause would be enforceable in equity. (27 R. C. L. 337). The trial court further took the position that all that was required of the Snook Company under the terms of the lease, was written notification to plaintiff that it had received a satisfactory offer, and the terms thereof.

While this may be true as a broad general statement of what the particular clause in the lease required, we do not believe that the notice of July 31st was sufficient. The offer in blank form, as contained in the notice, appears to be conditioned upon the offerors' ability "to effect suitable and proper financial arrangements" with an amount fixed as liquidated damages in the event that condition was not satisfied. Casting aside, for the moment, the question of the *bona fides* of the offer, can it be asserted by defendants that the notice contained an "offer to purchase said property"? We think not. Even the assertion of counsel for the offerors that they considered them-

selves bound by the offer did not make the same unconditional, for, although bound by its terms, the provision still remained as to liquidated damages in the event of failure to purchase, and there was no provision binding the offerors to purchase the property. Under the terms of the lease, plaintiff had a continuing right, terminating with the tenancy. *Casto* v. *Cook*, 91 W. Va. 209, 112 S. E. 502. We do not believe that notice of an offer, which on its face shows that the offer is conditional, is sufficient to put the lessee on guard to protect that right.

Of course, where the terms of the lease call for notice of a *"bona fide* offer," there is no doubt that the lessee should be reasonably apprised of such an offer having been made. *Burleigh* v. *Mactier* (N. J.), 108 A. 84; *Slaughter* v. *Mallet Land Co.*, (C. C. A. 5th) 141 Fed. 282. But we are not prepared to say that *bona fides* must be established in the notice where the lease, as here, calls merely for written notice of an offer satisfactory to lessor and the terms thereof. If the parties to this lease agreement had considered a showing of the *bona fides* of the offer to lessor necessary, they could have provided for the same, as in the *Burleigh* and *Slaughter* cases.

We do not mean to say that a fraudulent transaction can be the basis for the eviction of a tenant, or the forfeiture of the lease, where the tenant has complied with all terms and conditions thereof, regardless of whether a *bona fide* offer by a third person to the lessor is expressly required or not. Tiffany, Landlord and Tenant, Vol. II, sec. 259. In *Ogle* v. *Hubbel*, 1 Cal. App. 357, 82 Pac. 217, 220 an action of unlawful detainer was brought against the lessee by the grantees of the leased premises, one of whom was a son of the grantor. The lease contained an option to purchase similar to the one in the case at bar and conveyance was made after notice to the lessee. Upon receipt of notice, the lessee had complained of its *bona fides*. In affirming the lower court's finding for defendant lessee, the appellate court said: "There was sufficient evidence to support the findings of the court (below) as to the fictitious character of the transaction. * * * The lease contemplated a *bona fide* sale before de-

fendant could be deprived of his rights under the lease." The *Ogle* case, however, differs from the case under consideration in that no fictitious transaction is here alleged.

It appears from the allegations of the bill that the Snook Company turned over to Camilletti "for reply" Miller's letter of August 1st, rejecting the notice of July 31st. As indicated hereinbefore, the assurances and statements made by Camilletti in his reply, which appears as Exhibit No. 5 with the bill, and which apparently was received by plaintiff's counsel Miller on August 3rd, induced Miller to accept notice of an offer to sell as of that date. In addition to asserting the *bona fide* character of the offer, Camilletti said in the reply that he had advised his clients, the offerors, that from the terms of the offer they would be "compelled to purchase said premises," unless plaintiff exercised its exclusive option. This was the first indication to plaintiff that the offerors were bound to purchase under the terms of their offer to lessor. We believe that the letter from Camilletti, written as alleged at the behest of the Snook Company, was, in effect, an amendment to the notice, and, coupled with the original letter from Snook Company of July 31st, constituted the only written notification to lessee of a satisfactory offer to purchase. It necessarily follows that plaintiff was right in assuming, in reply to Camilletti's letter, that it had seven days from the date of receipt thereof, August 3rd, in which to exercise the option.

We are further of the opinion that plaintiff acted to preserve its rights when it became aware of the execution of the recorded real estate sales contract and that its terms differed in some respects from those of the original offer, though no notification in writing had been received.

Defendants assert that *Levy* v. *Peabody*, 238 Mass. 164, 130 N. E. 261, is on "all fours" with this case. However, there is nothing in the report of that case to indicate that lessee therein acted to exercise the option within the provided time.

No better illustration of the necessity of close adherence to the provisions of a lease giving lessee an exclusive option to purchase the leasehold upon notice from lessor

of an offer to purchase by a third person, could be found, than that presented upon this certification. For five years and eight months, the lessee had been paying five hundred dollars per month as rental for a store building. A new front and other improvements, costing $13,800.00, were installed at lessee's expense, as well as a side entrance, costing $250.00, which necessitated another lease covering adjoining premises. It appears from the amendment to the bill that the parties offering to purchase the leased premises were business competitors of the plaintiff. Why, then, should not the lessee under these circumstances have every opportunity, within the terms of the lease, to protect its investments, and retain its business location, when a competitor sought to purchase the store building it occupied as lessee?

There is no question raised as to the Kaufmans occupying the favored position of an innocent purchaser for value without notice, nor could there be, under the allegations of this bill and the demurrer thereto. We do not feel warranted in discussing the other matters raised, such as unjust enrichment, confederation and deceit, pretended consideration for the conveyance to Kaufmans, and the effect of differences in the original offer and the final sales contract.

We do say, however, that grounds of relief in equity have been stated in this bill, by its showing that the notice of July 31st was insufficient and that the plaintiff was not given the prescribed seven days in which to exercise its exclusive option after the amended notice was received. Plaintiff exercised its exclusive option within the time limit after receipt of the amended notice and under the terms as offered to the lessor, and in doing so, created a contract for sale of the property, an enforceable agreement. *Casto* v. *Cook, supra.*, McAdam, Landlord and Tenant, Vol. I, 5th ed., sec. 137.

The ruling of the Circuit Court of Ohio County, sustaining the joint and separate demurrers to plaintiff's bill of complaint and amended bill of complaint, is therefore reversed.

*Reversed.*

Rose, Judge, dissenting:

I am unable to follow my associates in the conclusion which they have reached in this case.

(1) The offer made by the Kaufmans to the Snook Company was sufficient in form and substance. It contained the price and terms offered and, if accepted, would have constituted a valid and binding contract between the offeror and the owner of the property. The fact that the offer contained a provision for liquidated damages in case of its breach by the offeror did not make the offer a conditional one nor one in the alternative, or otherwise affect its validity. *Wise* v. *United States*, 249 U. S. 361, 63 L. Ed. 647, 39 Sup. Ct. 303; *Sun P. & P. Ass'n.* v. *Moore*, 183 U. S. 642, 46 L. Ed. 366, 22 Sup. Ct. 240; *Yost* v. *Wills*, 86 W. Va. 71, 102 S. E. 728; *Beury* v. *Fay*, 73 W. Va. 460, 80 S. E. 777; *Wilkes* v. *Bierne*, 68 W. Va. 82, 69 S. E. 366, 31 L. R. A. (N. S.) 937; *Charleston Lumber Co.* v. *Friedman*, 64 W. Va. 151, 61 S. E. 815; *Brown* v. *Friedberg*, 127 Va. 1, 102 S. E. 468; 17 C. J., p. 931; 58 C. J., p. 982.

(2) The notice given by the Snook Company to Peerless Stores of the receipt of this offer was sufficient. It gave in complete detail all the elements of the offer, except the name of the offeror and the name of the holder of the deposit. This was all the lessee had any right to require. Its whole right was based upon the provision contained in the lease that it should have an option to purchase the leased property at the same price and on the same terms accepted by the lessor from any other proposed purchaser. The lessee, therefore, was concerned only with price and terms. These it was furnished. It may be true that it had a curiosity as to the offeror's identity, and as to the use to be made of the property when purchased, or as to other matters connected with the transaction; but it only stipulated for price and terms. If these other matters were important, they should have been provided for in the option contained in the lease. No decided case has been found where this question has been directly answered, but cases are reported in which an offer which did not disclose the

offeror's name has been enforced without contest on that score. *New Atlantic Garden, Inc.* v. *Atlantic Garden Realty Corp.*, 201 App. Div. 404, 194 N. Y. S. 34; *First Nat. Exchange Bank of Roanoke et al.* v. *Roanoke Oil Co., Inc.*, 169 Va. 99, 192 S. E. 764.

(3) Time was of the essence of this as all other options for the purchase of real estate. *Womack* v. *Agee*, 79 W. Va. 22, 90 S. E. 792; *John* v. *Elkins*, 63 W. Va. 158, 59 S. E. 961; *Fulton* v. *Messenger*, 61 W. Va. 477, 56 S. E. 830; *Pollock* v. *Brookover*, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403. The lessee was given seven days' option, this was all it contracted for, presumably all it asked. The fact that it was suspicious as to the *bona fides* of the offer could not suspend the running of this seven-day period. The lessee was given this seven days within which to determine all matters bearing upon its desire to accept the offer on its own behalf. During this period the question of price and terms, ability to finance, and all others, including the *bona fides* of the offer had to be determined. Otherwise, when would this period begin to run? Suppose the lessee had continued its investigation for four days or eight days or thirty days; would the starting of the seven days be thus deferred? The option was for seven days and no more; and the lessee was specifically notified that this limitation would be insisted upon. Could such a lessee extend the option by pretending suspicion as to its *bona fides*?

(4) The sales contract subsequently entered into and spread on the records in the office of the Clerk of the County Court was not a new sale and did not embody or rest upon a new offer. The original offer expressly provided that if the lessee did not exercise its option to purchase, the offeror and the landlord should enter into precisely this form of contract; and the sales contract itself fully recites and refers to the original offer and its acceptance, thus showing that the two papers relate to one and the same offer and transaction. The alleged differences in terms between the original offer and this final contract are too trifling to make them distinguishable.

(5) The improvements claimed to amount to $13,800.00, made by the lessee to the premises, give rise to no equities in its favor. They were made under the express provisions of the lease and with the express understanding that the lease might be terminated after five years in the manner in which it was brought to an end. The lessee, therefore, simply expended these funds with full knowledge that the lease might be thus terminated, and at its own risk.

I am clearly of the opinion, therefore, that the bill of complaint presents no ground for any equitable relief, and that the court below correctly sustained the demurrer thereto.

Fox, Judge, concurring:

I concur in the result, but I am not in full accord with the opinion prepared by Judge Lovins. In my judgment, the notice given by the George M. Snook Company to the plaintiff on the 31st day of July, 1939, which, with the exception of the name of the purchaser and the trustees, sets out *in extenso* the offer to purchase the property in question, would have required an election to purchase the same property by the plaintiff within seven days from that date, had that offer been an unconditional one and binding those who made it to purchase the property mentioned therein. While the offer does not disclose the name of the purchaser, I doubt if that was required under the lease agreement. When the plaintiff questioned the good faith of this offer and was reassured on that point, and then elected to treat the same, to the extent that it was an offer, as having been made in good faith, the effect of such action related back to the date when the notice was given.

My concurrence is based upon the view that the offer to purchase was conditional and not one that required any election on the part of the plaintiff; and that there was, in fact, no binding and unconditional offer to purchase until the 14th of August, following, when the contract of sale between the George M. Snook Company and the Kaufmans was entered into.

. The lease agreement provided for a lease of ten years and could not, if its terms were met, be terminated during the first five years. The lease provided that the lessee could make certain improvements, and, under certain conditions, was entitled to be reimbursed therefor to a limited extent. It was contemplated, I think, that such reimbursement could be brought about within the ten-year period covered by the lease. The power which the lessor reserved to make sale of the property, after the five-year period, and bring about a termination of the lease within six months after such sale, carried with it the requirement that upon an offer of purchase being received, the lessee should have notice thereof, and be entitled within seven days to purchase the property at the same price and upon the same terms. I think that the offer contemplated in the lease agreement was a binding and unconditional offer to purchase, and that whatever technical points may be involved, the equities of the case required that the offer should be unconditional. It should be borne in mind that when notice of such offer had been received by the lessee its election to purchase at the same price and on the same terms could only be exercised by a binding and unconditional undertaking on its part to purchase the property; and I contend that the offer which the lessor should have received should have been of the same nature.

There was an offer to purchase the property at the sum of $80,000.00, but it appears that all liability resulting therefrom could be extinguished under certain conditions. Leaving out the name of the purchaser and the trustees, the offer contained this provision: "In event the said _____ _____, or either of them, shall, by reason of their inability to effect suitable and proper financial arrangements, fail to purchase said property and execute said real estate sales contract, then the above named trustees are hereby authorized, directed and required to pay unto the said George M. Snook Company, a corporation, the sum of Five Hundred Dollars ($500.00); and this offer and proposal is made subject to the following condition, to-wit: that the payment of the aforesaid Five Hundred Dollars by the said trustees to the George M. Snook Com-

pany, a corporation, shall be received and considered as liquidated, measured and fixed damages, not as a penalty, by reason of non-compliance on the part of the said _____, or either of them, in failing to execute said real estate sales contract, without further liability on their part to the George M. Snook Company, a corporation." I construe this language to mean that those who proposed to purchase the property could release themselves from their offer, and from all liability thereunder, and refuse to consummate the actual purchase of the property involved, by permitting the trustees named in the offer, and to whom they had paid the sum of one thousand dollars, to pay five hundred dollars of their money to the George M. Snook Company as liquidated damages. I do not think such an offer required the plaintiff to make an election to purchase the property, involving as it would have done, the necessity for financing a proposition of the magnitude of that in question.

KENNA, PRESIDENT, concurring:

I do not think that the offer received by Snook Company can be properly construed as conditional due to the recital that the offeror is uncertain of being able "to effect suitable and proper financial arrangements." The offer also contains an express provision for liquidated damages if accepted and not fulfilled. Damages, of course, rest upon a breach which would not result from violating the terms of an accepted *conditional* offer, when the existence of the condition is to be determined by the judgment of the offeror. I, therefore, believe that no condition is to be implied which would render meaningless the express stipulation concerning liquidated damages, based upon breach after acceptance.

I think the notice of the offer was insufficient due to the fact that it named no offeror. The nature of the transaction, I believe, entitled Peerless to essential information from Snook Company in order to be furnished with the means of making inquiry as to the *bona fides* of the offer. It could not be expected to act upon a fiction nor

to rely implicitly upon the seller's statement fixing the price. More was involved than the purchase of real estate. The termination of the lease followed by a change of location of Peerless' business was also involved. True, Snook Company was not required to establish the *bona fides* of the offer, but it goes without saying that good faith was a necessary element. It was a transaction upon which the financial and business life of Peerless might largely depend, and of which its landlord would inevitably be fully informed. To say that Snook Company could withhold from Peerless necessary and reasonably expected information concerning the offer, to my mind, utterly fails to consider that their relationship extended beyond that of landlord and tenant.

The first notice of the offer furnished Peerless with no basis for an inquiry, and, I think, therefore, was not sufficient. Peerless received satisfactory assurances on August the third, and its preferment period then commenced to run. The notice would have so operated if its completion had come ten days later, or after the end of seven days. Clearly, in that case, the acquiescence of Peerless would not operate as a retroactive waiver of notice, but as a prospective mutual alteration.